**CENTRAL STATES PRODUCTION CORP. v. JORDAN.**

No. 28101. · Jan. 24, 1939.

Poe, Lundy & Morgan, for plaintiff in error.

C. J. Pinkston, for defendant in error.

PER CURIAM. This is an action to recover rentals for gas wells on the premises involved, owned by the plaintiff, said rentals being due for the years 1932, 1933, and 1934, for a half interest in the rentals in an oil and gas mining lease. Judgment was for the plaintiff in the sum of $1,125. The origin of the contract between the parties was a lease dated June 5, 1909, executed by Almira Woods to N. R. Reynolds. Under this agreement each well that produced gas was to be paid for at the rate of $150 per year.

Under a supplemental agreement executed in June, 1917, the parties extended the terms of the first lease, and in this supplemental agreement it was stipulated that each well was to be paid for at the rate of $250. Certain payments, not material to this discussion, with relation to the adjustment of rentals to and including the 1st day of September, 1918, are contained in this supplemental agreement.

The point to be decided is whether there was a cancellation of the oil and gas lease and the supplemental agreement so that the defendant was no longer obligated to pay the $250 per year for each gas well.

The first proposition of defendant is that the original oil and gas lease covering the property herein involved had expired by its own terms prior to the years for which rental is claimed by the plaintiff. On this proposition the record is not clear. We are inclined to the opinion that the judgment does not rest on the nature of production prior to the execution of the supplemental agreement of June, 1917.

This brings us to the second proposition of the defendant, which is that the supplemental agreement did not in any way extend the terms of the original lease.

An action had been brought by the original lessor to cancel the original lease for failure to produce. The supplemental agreement contemplates at least two things: First, the settlement of litigation; second, the payment for certain wells at the sum of $250 per well, whether said wells were drilled or not.

With relation to this latter arrangement the supplemental agreement provides:

"It is also understood and agreed by and between the parties hereto that the parties of the first part are to drill offsets promptly and sink enough wells on the premises to properly protect it from drainage and in case that the parties of the first part do not drill offsets with reasonable diligence or in case the parties of the first part elect not to drill offsets, this lease may be kept in force and effect by paying the royalty for a well whether it is drilled or not, said royalty to be in the sum of $250 per year annually in advance.

"It is further agreed and understood by and between the parties hereto that, as heretofore stated, there is to be not less than three gas wells on the premises on or before September 1, 1918, and that on September 1, 1918, there is to be on said premises three wells or the parties of the first part are at that time to be paying for not less than three gas wells at the rate of $250 per annum. To be more specific, the rental on two gas wells will be payable and due on September 1, 1918, and if a third well is drilled before that date, the rental will be paid on the date when said well is completed and annually thereafter, but in any event by September 1, 1918, there must be three wells on the premises or at the option of the first parties they must be paying for three wells at that time.

"This is to be construed and considered as an amended and supplemental agreement."

This plainly created a new right of the lessee to pay in lieu of production. The question is, Did it create an obligation enforceable against the defendant until the premises had been abandoned and released by a surrender of said premises? We think that it did. Under the plain provision of this agreement, so long as the defendant stayed on the premises and did not surrender its right, it was obligated to make the payments. Under the express terms of this contract it was agreed that the defendant, after September 1, 1918, would pay for three wells whether drilled or not, or in the alternative surrender the premises.

We have been cited to no case which involves a similar fact situation to the one at bar. McKee v. Grimm, 111 Okla. 24,

238 P. 835, and Farlow v. Frankson (Kan.) 203 P. 299, were actions for balance due for rentals for specific periods before the lessee had exercised the right to surrender, but without the question of production being therein involved. A case more nearly in point among those cited is Ardizzonne v. Archer, 71 Okla. 289, 160 P. 446. Therein the lessee had agreed to pay $100 per stipulated period or drill a well, and there was reserved the right to cancel on a payment of $10. If there was a definite period for the duration of the lease after the first three months, it does not appear in the statement of the case. Therein the court said:

"In view of the small bonus paid, it must be assumed that the value to the ward arose out of the drilling of a well or the payment of the rentals."

And further:

"The lease prescribed the manner in which it might be surrendered by the lessee. This being true, we think no other mode could be adopted, except by the consent of all the parties thereto, and that the court was so much a party to the lease; that if the rights of the minor to these rentals were to be given up in the manner not prescribed in the lease, the approval of the county court was a necessary requisite thereto. His consent is as necessary to a change in the mode of surrender prescribed in the lease as it is to the amount of the rentals therein covenanted to be paid."

It is a general rule in this state that express covenants control over implied covenants. Southwestern Oil Co. v. McDaniel, 71 Okla. 142, 175 P. 920; Southwestern Oil Co. v. Kersey, 80 Okla. 135, 195 P. 120; Eastern Oil Co. v. Beatty, 71 Okla. 275, 177 P. 104; Bearman v. Dux Oil & Gas Co., 64 Okla. 147, 166 P. 199. Most of these cases deal with the right to delay development before production. Most of them also involve the right of the lessee or assignee under the lease to elect to pay rentals instead of the right of the lessor to collect rentals. The distinction, as we view it, is not material in relation to the principle involved. The case at bar deals with the delay as provided in the specific provisions of the supplemental agreement after production, or at least after the drilling of a gas well on the premises. We have failed to find any case which expressed the opinion that production in paying quantities applies to agreements to pay for gas wells in a specific amount with the right of surrender specifically given, where such agreement has been entered into after providing for special payments and after a well has been drilled on the premises, as in the

case at bar. All the cases relied upon by the defendant deal with the production in oil and gas leases where payment was in kind, that is, based upon the percentage of the oil recovered or an agreement to pay a stipulated price for a gas well as long as gas is produced in paying quantities, as in Hennessey v. Junction Oil & Gas Co., 75 Okla. 220, 182 P. 666, cited and relied upon by the plaintiff in error.

The rule of implied covenants to develop an oil and gas lease is a rule growing out of the operations of oil and gas leases where the production is for a mutual benefit of both the lessor and the lessee. It applies where the covenants are not otherwise expressed. In Southwestern Oil Co. v. Kersey, supra, the court said:

"Where an oil and gas lease contains an express stipulation for delay in development by the payment of rentals, held, that an implied covenant for development will not be permitted to change the agreement of the parties."

In the case at bar it is plain that after June, 1917, at least the parties were not considering the question of paying quantities. The agents of the defendant were upon the premises from time to time testing the well. The original lease specifically provided that the lessee had the right to surrender possession of the premises by the execution of a release. This release was not executed until December of 1934. The extension agreement was entered into long after the evidence showed the gas well on the premises was producing gas in paying quantities. The agreements were expressed and defined, even the number of wells to be paid for regardless of whether such wells were drilled. For some reason not disclosed by the evidence, the parties entered into a covenant more in the nature of one not to produce than a covenant to produce. This agreement, construed together with the former lease, provided the method of termination. We are of the opinion, and hold, that the finding and judgment of the court is sustained by competent evidence.

The judgment is affirmed.

BAYLESS, C. J., and RILEY, OSBORN, CORN, GIBSON, HURST, DAVISON, and DANNER, JJ., concur. WELCH, V. C. J., absent.