## MAGNOLIA PETROLEUM CO. v. VAUGHN et al.

No. 30794. July 3, 1945.

Rehearing Denied Sept. 18, 1945.

*161 P. 2d 762.*

Robert W. Richards, of Oklahoma City, Walace Hawkins, of Dallas, Tex., and B. B. Blakeney, Jr., of Oklahoma City, for plaintiff in error.

Williams & Williams, of Ardmore, for defendants in error.

OSBORN, J. This is an action to cancel the undeveloped portion of an oil and gas lease.

On December 11, 1913, Edwin T. Richards and Irene A. Richards executed and delivered to the Corsicana Petroleum Company a lease for oil and gas purposes on a 130-acre tract of land in Carter county and a 70-acre tract of land in Jefferson county. The two tracts of land are not contiguous, being about a mile air-line apart. The cash consideration for the lease was $25,840. The lease required the lessee to commence operations within three months from date or pay an advance rental of $1 per acre for each three months thereafter operations were delayed. The lease was for a term of five years from date and as much longer as oil and/or gas was found in paying quantities.

During the primary term of the lease, the 130-acre tract was developed and has ever since produced oil or gas, but no well has ever been drilled on the 70-acre tract. The lease was assigned to, and is now owned by, the defendant Magnolia Petroleum Company. The 70-acre tract now belongs to the plaintiffs, Thomas C. Vaughn, Kermit P. Richards, and A. T. Johnson.

On December 23, 1940, plaintiffs sent defendant a letter demanding that, if it had not abandoned the 70-acre tract, it either release the lease as to it or proceed within a reasonable time to comply with the implied covenants of said lease to diligently develop and operate the same. Defendant failed to comply with the demand and this suit followed. In their petition, the plaintiffs asked that the lease on the 70-acre tract be canceled for breach of the implied covenant to develop and op-

erate the same and on the ground that the same had been abandoned. The defendant, by its answer, denied that it had abandoned the lease as to said 70-acre tract and alleged that it had complied with all the terms and conditions of the lease.

At the trial the facts above stated as to the ownership of the lease, the ownership of the land, the development of the 130-acre tract, the failure to develop the 70-acre tract, and the demand by plaintiffs for development of the 70-acre tract were stipulated to as being true. The plaintiffs then rested. The defendant introduced some testimony as to the intention of the company not to abandon the lease as to said 70-acre tract and to develop this land and all other land owned by it consistent with the supply and market and when the company feels that it can make a profit by such development. The court entered judgment for the plaintiff canceling the lease as to the 70-acre tract, and from that judgment this appeal was prosecuted.

If the judgment canceling the lease is to be sustained, it is apparent, since our decision in the case of Doss Oil Royalty Co. v. Texas Co., 192 Okla. 359, 137 P. 2d 934, it will have to be sustainable on the theory of breach of the implied covenants to develop said noncontiguous tract, instead of abandonment, since there is no evidence of an intention to abandon. The case was tried in the lower court before our decision in the cited case; but it was tried on both theories, abandonment and breach of implied covenants.

The defendant, or its assignor, has held this lease since December 11, 1913. Being for a primary term of five years, the lease by its own terms would have expired in 1918, except for the exploration of the 130-acre tract a mile distant and the production of oil thereon in paying quantities. There is no testimony showing any development in the immediate vicinity of the 70-acre tract involved herein, and no testimony showing any present intention to de-

velop the same. In fact, the evidence of the superintendent of defendant is clear and convincing that no present intention to drill on said lands exists. After demand by plaintiffs that defendant go upon said lands and develop same, which demand remained unanswered by defendant company, plaintiffs waited seven months before instituting this action. Thus the defendant, with several producing wells a little over a mile away, permitted this 70-acre tract to remain wholly unexplored and undeveloped for a period of approximately 28 years, evincing no intention of going upon said lands and exploring same pursuant to their lease contract, relying solely upon development and production from another separate tract contained in the same lease contract to extend their rights indefinitely as to this tract. No special circumstances are asserted by defendant whereby any inequity appears upon cancellation. It appears, therefore, that the judgment of cancellation is strongly supported by the record and must be sustained unless the further contention of defendant be meritorious.

The 9th numbered clause of the printed lease is as follows:

"And in consideration of One Dollar ($1.00) in hand paid to the party of the first part by the party of the second part, the receipt of which is hereby acknowledged, the party of the first part agrees and binds himself, his heirs, administrators and assigns not to declare a forfeiture of this lease for any reason except for a failure of the second party to pay the rent when due, as provided herein."

This lease contract was made in 1913, at a time when the oil and gas industry in this state was barely out of its swaddling clothes. The courts of the country had spoken in this new field in only a few cases, and this court had given virtually no consideration to the many and difficult and complex questions arising out of the adaptation of old and fundamental principles of law to new and strange facts created by a new and little known and less understood industry.

664

Each new strike of oil, with fantastic resulting wealth and fabulous increases of value of lands, in the immediate and even more remote vicinity of the new find, brought forth new contentions and questions, and the courts were not always harmonious in their decisions. It was but natural, therefore, that those who hazarded large sums of money in drilling and exploring a new area should, by contract as definite and certain as possible, eliminate every foreseeable contention which might result in misunderstanding or litigation.

The defendant contends that the above-quoted clause 9 has the effect of excluding all implied covenants, and if it does not have such effect, it at least has the effect of waiving the right to enforce a forfeiture for breach of the implied covenants.

It is clear that the language used is not susceptible of the construction that the implied covenants to explore, develop, offset and prevent drainage were intended to be waived or contracted against, for certainly more apt language could and would have been used if such was the intention of the contracting parties. It is well settled that oil and gas leases will be construed strongly against the lessee and in favor of the lessor, and that ordinarily they will be construed so as to promote development and prevent delay and unproductiveness. New State Oil & Gas Co. v. Dunn, 75 Okla. 141, 182 P. 514; Curtis v. Harris, 76 Okla. 226, 184 P. 574; Garfield Oil Co. v. Champlin, 78 Okla. 91, 189 P. 514; Berton v. Coss, 139 Okla. 42, 280 P. 1093; Donaldson v. Josey Oil Co., 106 Okla. 11, 232 P. 821; Superior Oil & Gas Co. v. Mehlin, 25 Okla. 809, 108 P. 545.

Nor do we think the parties to the contract were attempting to define their rights at a remote time in the future after the primary term of the lease had expired by lapse of time, for surely the lessee was not entering into a solemn and binding contract and at the same time contemplating breaching the very same contract by refusing to carry out the express terms and the conditions and covenants implied by law. It was the desire of lessee, concurred in by lessors, that, for a primary period of five years, the lessee should have the right to go upon said premises and explore for oil; it agreed to "commence operations upon said premises within three months from this date (December 11, 1913) or thereafter to pay to first parties an annual rental of One Dollar per acre in advance, for each three months further delay, until operations are commenced."

When we consider the uncharted field of the law as to the rights of lessors and lessees of oil and gas, above alluded to, we find that considerable confusion existed as to the rights of the parties to oil and gas lease contracts. See Owens v. Corsicana Petroleum Co. (Tex. Civ. App.) 169 S. W. 192, reversed May 19, 1920, by the Supreme Court of Texas. See Corsicana Petroleum Co. v. Owens 110 Tex. 568, 222 S. W. 154.

The same state of confusion existed in this state for a number of years. In the case of Brown v. Wilson (decided January 11, 1916, instituted in lower court July, 1914), 58 Okla. 392, 160 P. 94, this court held that a lease for ten years, where the lessee agreed to complete a well within four months or pay a certain sum in advance for each delay of three months in completion, "was voidable at the option of the lessor at any time after four months for lack of mutuality . . . the lease was nudum pactum." This opinion was overruled (October 8, 1918) in the case of Northwestern Oil & Gas Co. v. Branine, 71 Okla. 107, 175 P. 533, wherein it was determined by this court that:

"The fact that the lease conferred upon the lessee the option of drilling or paying or taking advantage of the surrender clause and terminating the lease did not render same void for lack of mutuality."

And such has been the consistent holding of this court since that time.

When we place this clause 9 against the historical background, we think it is clear that the parties were attempting to contract with reference to their rights during the primary term of the lease, so that a forfeiture could not be claimed for any reason except for non-payment of delay rentals as to all rights sought to be conveyed and expressly set forth in the lease contract. The parties were not seeking to limit their rights as to any legal remedies which might accrue to them by reason of the wrongful breach of the terms of the contract. As so construed, the contract is entirely valid. The fact that the defendant went upon one tract of land embraced in the lease and drilled a productive well, so that no delay rentals ever accrued, as asserted in the briefs herein, and the fact that no delay rentals have ever become due, and under the terms of the lease, no delay rentals could become due after 1918, lends strong weight to the correctness of this construction of the provision under consideration. It is unnecessary, therefore, to consider the effect, if any, of sec. 216, Title 15, O. S. 1941, declaring void every stipulation or condition in a contract by which any party thereto is restricted from enforcing his rights under the contract by the usual legal proceedings in the ordinary tribunals.

Affirmed.

BAYLESS, CORN, DAVISON, and ARNOLD, JJ., concur. GIBSON, C.J., HURST, V.C.J., and WELCH, J., dissent.

———

HURST, V.C.J. (dissenting). It is my view that the quoted clause is not ambiguous, and hence rules of construction do not come into play. The clause clearly refers only to the *reason* for which, not to the *time* during which, a forfeiture may be declared. By the majority opinion, this court first declares a plain clause to be ambiguous and then construes it entirely too strictly. In effect, the court rewrites the clause and makes a better contract for the present owners, who acquired the property with constructive notice of the lease, than the former owners made, for which they received an unusually large bonus of $25,840, or nearly $200 per acre, and an unusually large annual rental of $4 per acre. There is no showing that the original lessors ever contended for the construction urged by the present owners and adopted by the majority opinion.

It is clear that clauses in oil and gas leases abrogating or limiting covenants usually implied in oil and gas leases are valid where, as in Oklahoma, there is no constitutional provision, statute, or judicial decision establishing a contrary public policy (Eastern Oil Co. v. Beatty, 71 Okla. 275, 177 P. 104; Central States Production Corp. v. Jordan, 184 Okla. 262, 86 P. 2d 790; Summers' Oil & Gas (Perm. Ed.) § 397; 24 Am. Jur. 549; 50 C. J. 858), and it logically follows that clauses which waive the remedy of forfeiture for breach of such covenants, as here, are also valid, despite the intimation in the majority opinion that 15 O. S. 1941 § 216 may render such clauses invalid. Such clauses, while subject to strict construction against the lessee in case of ambiguity, will be given effect in the absence of fraud or bad faith on the part of the lessee in delaying or refusing development. Merrill, Covenants Implied in Oil and Gas Leases (2nd Ed.) §§ 5, 6, 65, 199-203. Here no fraud or bad faith in delaying development is charged or established.

For the foregoing reasons, I respectfully dissent.

The Chief Justice and Mr. Justice WELCH concur in these views.