MORRISON et al. v. JOHNSON et al.

No. 32677.   July 1, 1947.

Rehearing Denied Oct. 14, 1947.

*185 P. 2d 208.*

J. G. Clift, of Duncan, for plaintiffs in error.

Williams & Williams, of Ardmore, for defendants in error.

CORN, J.   This is an appeal from a judgment in favor of plaintiffs rendered by the district court of Stephens county,

canceling an oil and gas lease on the following property, to wit:

"The N/2 of NW/4 of NW/4 and SW/4 of NW/4 of Section 14, and the S/2 of NE/4 of NE/4 and N/2 of SE/4 of NE/4, and N/2 of SW/4 of NE/4, and SW/4 of SW/4 of NE/4 of Section 15, Township 3 South, Range 5 West, containing one hundred acres."

Defendants (Morrison) acquired the lease from the owners of the property in 1926.   The lease was for a primary term of five years, and contained an implied covenant to diligently develop.

The petition alleged the Morrisons and Saunders Producing Corporation were owners of the oil and gas lease; lessees had drilled four wells on the property, two of which had been abandoned and one of the other two only producing a small amount of gas; that the primary term of the lease expired (October, 1931) and that the lease, except for ten acres described as "The NE/4 of SW/4 of Section 15, Township 3, south, Range 5 West", had been abandoned, that defendants had failed to develop the land for oil and gas purposes; that plaintiffs had notified defendants on March 6, 1944, to comply with the implied covenants of the lease within a reasonable time, not later than 60 days, or to release the premises.

Defendant Saunders Producing Corporation filed answer, which was adopted by the Morrisons, wherein they admitted execution of the lease, but denied the alleged failure to develop.   Further, defendants alleged that after execution of the lease the mineral owners entered into a supplemental contract with the lessees whereby the lessees paid such owners $750, and agreed to further develop, and further agreed the two gas wells (drilled on the land in 1926) should hold the lease beyond the five-year term. Defendants further answered that upon receipt of plaintiffs' notice to develop they had complied by carrying on further development of the premises.

Certain defendants (W. W. Woodworth and R. A. Hefner) filed answer adopting plaintiffs' pleadings. The heirs of W. A. Samples were given leave to intervene and likewise adopted plaintiffs' pleadings.

The original lease contained no provision for payment of rentals. The supplemental contract was dated November 4, 1927, and was recorded December 9, 1927. This instrument recited the execution of the lease; that the parties desired to cancel same; that in consideration of the $750 paid by the Morrisons to various interest holders, the contract was canceled and all parties excused from further obligation thereunder. It then provided that the two gas wells should hold the ten-acre tracts surrounding each well, and if Morrisons did not drill on the land before October 16, 1928, $1 per acre rentals were to be paid.

The contract then provided as follows:

"It is further agreed and understood between all of the parties hereto that the two gas wells on said acreage shall hold said lease on the whole 120 acres so long as oil and gas is produced from said two wells, beyond the five year period mentioned in said lease provided the rental of $1.00 per acre per year is paid as provided for herein, but if an additional producing well is drilled by the lessee upon any part of said 120 acres, then that shall excuse the further payment of rentals."

The answer adopted by the defendants (Morrison) made no allegation of payment of rentals.

Plaintiff Johnson purchased half the mineral interest in this land on November 7, 1927, the deed being recorded December 3, 1927. He later conveyed half his interest to his wife, coplaintiff herein. These plaintiffs never received any rentals and no part of the consideration for the supplemental contract was paid them.

Plaintiffs brought an action in July, 1941, for cancellation of this lease, which was pending until dismissed by plaintiffs on March 2, 1944. Thereafter plaintiffs served notice upon defendants, and in July, 1944, commenced the present action. During the period following the receipt of the demand for development, defendants built roads, moved some equipment onto the lease, and the day before the trial dug a slush pit.

Plaintiffs' evidence was directed toward showing that nothing had been done on the property since 1935, until defendants' received the notice and demand to develop the property; that only one well had produced anything since 1938; that there was a steady demand for oil and there was paying production from wells within one-fourth mile of this lease, producing from a 1,400 foot sand; that no well had been drilled to this depth on the lease, and as a practical proposition the lease could be considered as abandoned, that plaintiffs (Johnson) had no knowledge of the existence of the contract when they purchased the land.

For the defendants the evidence was substantially as follows: Saunders testified his company acquired one-half interest in the lease in 1930 when a gas well (No. 3) was drilled, and the same year drilled No. 4 as a gas well. In 1931 they deepened one of the original wells (No. 2) and got only low gravity oil; in 1935 pumped about 150 barrels but it was lost from storage, and this was the last work done on the well; since that time had intended to install an asphalt plant to handle this oil and had acquired some equipment for such purpose; that he had operated the lease under the contract, had complied with the terms and had attempted to develop the lease. Since March, 1944, had drilled a water well, built a road, slush pit and had put some equipment on the lease.

Morrison testified that when he took the lease there were two gas wells on

the property (Nos. 1 and 2) which he continued to operate; that he made an agreement with Saunders to drill before the primary term ended and thought the supplemental contract was good; that there was no use in drilling to 1,400 feet, but that he would drill deeper (8,000) for production if somebody would join him in the expense; and that he was willing to join Saunders in the asphalt plant; one gas well was still producing and another well was capable of production; that he had complied with the contract and felt that the lease had been developed.

Defendants admitted no oil had ever been marketed from the lease, nor had any royalties been paid.

After hearing the testimony the trial court decreed that defendants had abandoned the lease and had failed to comply with the implied covenant to diligently develop, except as to the 20 acres upon which two gas wells (Nos. 3 and 4) were situated, and entered judgment canceling the lease as to the undeveloped portion (100 acres).

The various assignments of error upon which defendants predicate their claim for reversal of this judgment may be considered under the single proposition that the trial court erred in canceling the lease, the judgment not being sustained by sufficient evidence.

Between the date of the plaintiffs' demand and the date suit was filed the defendants drilled a water well, drilled another hole to a depth of 465 feet, built roads and placed some equipment on the lease, and the day before the trial dug a slush pit on the lease. It is undisputed that the demand for development was made. In view of the evidence showing that defendants held the lease from 1926, and did not develop the property after 1930 (with one exception noted as to 1935) the only question for determination is whether the trial court, under the circumstances, was justified in canceling the undeveloped portion of the lease.

It is consistently held that suits for cancellation of producing oil and gas leases are governed by principles of equity, and that a forfeiture will be declared when this will effectuate justice, the granting of such relief depending upon the facts and circumstances surrounding each particular case. Doss Oil Royalty Co. v. Texas Co., 192 Okla. 359, 137 P. 2d 934; Magnolia Pet. Co. v. Rockhold, 192 Okla. 628, 138 P. 2d 809; McKenna v. Nichlos, 193 Okla. 526, 145 P. 2d 957; Magnolia Pet. Co. v. Vaughn, 195 Okla. 662, 161 P. 2d 762.

In the Doss Case, supra, we pointed out that the implied covenants in an oil and gas lease require a lessee to develop with due regard to the lessor's interests as well as his own. And, where conditions do not indicate to the lessee the value of further development, it is only fair that, after a reasonable time, the lessee should surrender the undeveloped portion of the lease and thus permit the lessor to secure other development.

Defendants testified they did not contemplate further drilling unless someone else joined in and assisted them. No drilling at all had been done for more than 10 years. After receipt of plantiffs' demand defendants did not drill except for water wells and one well drilled to a depth of 465 feet (but not to a known sand) and then abandoned. Under these circumstances the finding of the trial court that there was a failure on the part of defendants to diligently develop the entire lease is not against the clear weight of the evidence.

Judgment affirmed.

HURST, C.J., DAVISON, V.C.J., and RILEY and BAYLESS, JJ., concur. WELCH and GIBSON, JJ., dissent.