**WOLFSON OIL COMPANY, a Partnership, composed of Sam Wolfson and R. I. Wolfson, Plaintiffs in Error,**

v.

**Nil K. GILL, John K. Gill, Leroy G. Gill, Dan C. Gill and Eugene W. Gill, Defendants in Error.**

**No. 37131.**

Supreme Court of Oklahoma.

Feb. 19, 1957.

Rehearing Denied April 9, 1957.

Carland E. Smith, George R. Inglish, Morris G. Gray, Okmulgee, for plaintiffs in error.

Richard A. Hays, Henry M. Beidleman, Okmulgee, for defendants in error.

JACKSON, Justice.

This is a proceeding in equity wherein owners of the South Half (S½) of the Southeast Quarter (SE¼) of Section Thirty-Six (36), Township Fourteen (14) North, Range Eleven (11) East in Okmulgee County, Oklahoma, obtained a judgment cancelling an oil and gas lease upon the land described, save and except ten acres described by metes and bounds, together with a producing oil well thereon located in the center of the tract.

Nil K. Gill and associates, defendants in error, will be referred to as plaintiffs, and

Wolfson Oil Company, a co-partnership, plaintiffs in error, will be referred to as defendant as they appeared in the trial court.

On the 9th day of September, 1915, the then owners of the described land executed an oil and gas lease thereon to the Prairie Oil and Gas Company; that company, or its assigns, drilled eight wells on the North Half of the lease during the years 1918 and 1919. Seven of the wells were drilled to the Dutcher Sand and one to the Booch Sand. Five of the wells were drilled on an East-West line two hundred feet south of the north line of the described land, and three wells were drilled on an East and West line six hundred and sixty feet south of the north line of the premises. No wells were drilled on the South Half of the leasehold estate.

Plaintiffs' action to cancel the oil and gas lease was filed on the 21st day of June, 1954, upon grounds that no wells have been drilled since 1919, and that the undrilled locations, if developed, would produce oil and gas in paying quantities. It was further alleged that the development of the lease as a whole has been delayed for an unreasonable length of time, warranting its cancellation.

Defendant concedes that it has not developed the lease since its acquisition and that it is presently receiving a very small profit over and above the cost of operation from the one producing well upon the premises. It is also asserted that it would not be profitable to drill additional wells but that the lease could be made profitable by a program of secondary recovery by "water-flooding".

Upon the Court's finding that all of said wells have been plugged and abandoned for a period in excess of eighteen years, save and except well No. 5, and that defendant or its predecessors in interest in the leasehold estate failed and neglected to diligently drill the undeveloped portion of the lease, the trial court found that the lease should be cancelled, except as to the well No. 5, and ten acres as a location site, with right of ingress or egress to said well.

We are of the view that the judgment so rendered must be sustained unless defendant's contention that it operated the lease as a prudent operator with due regard to the interest of both plaintiff and defendant, is supported by the record.

One additional question posed by defendant is, whether the trial court erred in refusing to sustain its demurrer to plaintiffs' evidence without affirmative proof being made that a prudent operator would drill additional wells on the undeveloped acreage or proof of the cost of drilling, equipping and operation, and that the wells would produce a profit over their cost. For reasons which we shall note, infra, we are of the view that the demurrer was properly overruled.

■ Defendant's position is that it would not be economical to drill additional wells on the undeveloped portion of the lease. In support of that position, defendant produced four witnesses who testified that they had observed the development of this oil field producing from the Dutcher Sand since its initial development; that in their opinion the undeveloped portion of the lease in all reasonable probability would not produce a paying well; that a small producer would not pay the cost of drilling equipment and operation, and that as experienced operators they expressed the opinion that a prudent operator would not drill additional wells upon the undeveloped acreage. This evidence, without more, justified the judgment rendered. If the purpose of the lease (reasonable development) has ceased to exist lessee cannot complain that the undeveloped portion thereof be cancelled.

■ Defendant, in an effort to justify the delay of further development, contends that the lease has a potential value for secondary recovery and in justification of the delay states that it has not completed its study of geological and scientific data with reference to a water-flooding program which, when completed, in the judgment of the defendant, would increase the production from well No. 5.

Shortly after acquiring the lease here involved, defendant also obtained assignments to the Oliphant and the Huckaby lease located in the vicinity of the plaintiffs' land, which leases were producing crude in some quantities from the Dutcher Sand; and also procured assignments of two additional leases in the same area which have been plugged and abandoned. After acquiring these leases, defendant optioned the leasehold estates to the Buffalo Oil Company and at a later date to the Feldman Oil and Gas Company for a water-flooding operation of the Dutcher Sand.

These companies drilled test wells to the Dutcher Sand and after making a study of the corings determined that the Dutcher Sand was unfavorable for a water-flooding program. Defendant testified that the Buffalo Oil Company operated over the entire mid-continent area, and that it was one of the most progressing water-flooding companies in Okmulgee County. With reference to the Feldman Oil and Gas Company's exploratory work, conducted in 1953, defendant stated that this company was highly competent and very successful in its water-flooding operation.

Notwithstanding that the reports of the Buffalo and Feldman Companies condemned the area producing from the Dutcher Sand as having a potential value for a water-flooding program, defendant below, and here, contends that further geological and scientific data might prove otherwise, and therefore the lease is not subject to cancellation under its implied covenant for reasonable development and production. We cannot agree with that position in view of the evidence that the Dutcher Sand is not subject to a successful water-flooding program.

Under this record the trial court did not err in refusing to sustain defendant's demurrer to plaintiffs' evidence, notwithstanding plaintiff did not submit proof that a prudent operator would have drilled additional wells, or proof as to the cost of drilling equipping and producing such wells.

Where, as here, the evidence shows that the defendant and its predecessors in interest have held the lease since 1915, and have made no effort to develop the South Half of the premises, after the primary term thereof, a court of equity may under the implied covenants to diligently develop the property, cancel the undeveloped portion of the lease. Doss Oil Royalty Co. v. Texas Co., 192 Okl. 359, 137 P.2d 934.

Furthermore, defendant's evidence that the possibility, or even the probability, that further drilling may prove unprofitable does not constitute an absolute bar to cancellation for breach of the implied covenants to properly develop, when the delay in development is of unconscionable duration. Doss Oil Royalty Co. v. Texas Co., supra. The rule thus announced was restated in McKenna v. Nichlos, 193 Okl. 526, 145 P.2d 957; Colpitt v. Tull, 204 Okl. 289, 228 P.2d 1000.

As disclosed by the record the primary recovery from the producing horizon had been practically exhausted. In an attempt to increase production from well No. 5, defendant attempted a secondary recovery by a process of water-flooding. Although that method proved to be unsuccessful, it is now contended that future exploratory methods might make such secondary recovery feasible and, therefore, it has met the legal requirements of reasonable development under the implied covenants of the lease.

We are unable to agree with that contention for the reason that it is not sustained by proof for its support. To the contrary, the evidence of the defendant reasonably construed leads us to the conclusion that the leasehold estate, herein involved, and the other leases in the area acquired by the defendant, which produced oil in small quantities, were primarily obtained for a program of secondary recovery and which we have seen has proven nonfeasible.

One member of the defendant's partnership firm, as a witness in this con-

**286**

nection, testified that further development by drilling or by water-flooding would only be employed if and when other operators with leasehold interest in the area joined the defendant in future exploration or development. A similar contention was unsuccessfully advanced in Morrison v. Johnson, 199 Okl. 264, 185 P.2d 208.

From our consideration of the entire record, we are of the view, and so hold that the decree of cancellation and the judgment rendered thereon should be and it is hereby affirmed.

DAVISON, WILLIAMS, BLACKBIRD and CARLILE, JJ., concur.

WELCH, C. J., and HALLEY and JOHNSON, JJ., dissent.