J.E. DEVINE, Plaintiff-Appellant,

v.

LADD PETROLEUM CORPORATION,
Defendant-Appellee.

No. 82–2040.

United States Court of Appeals,
Tenth Circuit.

Nov. 12, 1986.

Before MOORE, McWILLIAMS, and ANDERSON, Circuit Judges.

### ORDER AND JUDGMENT ON REHEARING

JOHN P. MOORE, Circuit Judge.

This matter is before the court on a petition for rehearing of *Devine v. Ladd Petroleum Corp.*, 743 F.2d 745 (10th Cir. 1984). Rehearing was granted, and the court's previous opinion was withdrawn. The seminal issue upon rehearing is whether this court erred in concluding that the settlement agreement between the parties was not ambiguous as a matter of law. After consideration of the supplemental briefs and the reargument, we conclude the court's prior holding was incorrect. With that conclusion, we proceed to consider the merits of the original appeal and affirm the judgment of the trial court.

I.

The facts of this case are fully delineated in the prior reported opinion, and we shall not repeat them here in their entirety. Our previous view of those facts led us to assume that the trial court had found the letter of August 27, 1976, ambiguous, and therefore, it had construed additional documents to determine the intent of the parties. We then reviewed that letter ourselves and found it unambiguous. We

reached this conclusion because we believed the letter provided only for settlement of Ladd Petroleum's obligations for development of the West half of the SW¼ of Section 13. Because of our legal analysis,[1] we concluded the trial court erred by not confining its consideration of the intent of the parties to the contents of the August 27 letter. These are the points with which Ladd takes issue on rehearing.

### II.

Ladd takes the position that the question of ambiguity was not raised in the trial court; therefore, it was error for us to consider the issue in our opinion. We disagree. Since, as previously noted, the question of ambiguity is one of law in the first instance, we are free to make our own determination of the question. *Rockwood & Co. v. Adams,* 486 F.2d 110 (10th Cir. 1976).

By the same token, having granted rehearing, this panel has the authority to examine the documents and make our own assessment of their ambiguity or lack thereof. In accordance with that authority, we note our respectful disagreement with the previous panel of the court. The prior conclusion that the letter of August 27, 1976, was not ambiguous was predicated upon the absence of specific language in the letter which referred to the East half of the SW¼ of Section 13. We therefore concluded that the parties did not intend the settlement to apply to Ladd's responsibility for drilling in the East half of that quarter section. This led us to further conclude that the agreement was not ambiguous and that Devine was not barred by the settle-

ment from bringing this action to effect his rights in the East half.

We now believe we failed to recognize that the letter of August 27, by its caption and opening paragraph, was meant to relate to the *entire* SW¼ of Section 13. The introductory paragraph states: "[T]his letter sets out Ladd's understanding of the settlement between Ladd Petroleum and Mr. J.E. Devine regarding Mr. Devine's request for additional development on the oil and gas leases covering the SW/4 of Section 13 and the NW/4 of Section 24–20N–3N, Garfield County, Oklahoma." This recognition calls into question this language of the letter: "Mr. Devine shall not cause legal action for development to be brought against Ladd...." Because the letter apparently was intended to apply to both halves of the quarter section, and because the letter makes no mention of Ladd's obligations on the East half, we must ask whether the parties agreed the drilling of a well on the West half would bar Devine from litigating Ladd's responsibilities for drilling on the East half. Reading the letter of August 27 in its entirety, the answer to this question is not readily evident from the document itself. To the extent the question is unanswered in this case, the letter is ambiguous as a matter of law. It follows, then, that the trial court properly construed other documents to arrive at the intent of the parties.[2]

### III.

Having concluded the original opinion of this court was reached improvidently, we are left with the remaining issue of whether the trial court erred in determining the August 27 letter relieved Ladd of the obligation to drill further wells on Section 13.[3]

---

1. Ambiguity is always a question of law for the court to determine. *Ferrell Construction Co. v. Russell Creek Coal Co.,* 645 P.2d 1005 (Okla. 1982).

2. In point of fact, there was never a dispute between the parties about whether the August 27 letter constituted the entire agreement between them. Indeed, Devine tried the case as though other documents had to be considered, and its first argument on appeal is that the trial court did not take into consideration "the entire

correspondence between the parties." Indeed, the trial court made no holding whatever on the issue of ambiguity because both parties urged that the meaning of their agreement was to be determined by considering all the contemporaneous documents and facts.

3. Devine also argues that the trial court erred by confining its review to only two letters and urges the court should have considered other evidence. Devine does not point to any additional evidence, however, and he has not ex-

Devine maintains that under Oklahoma law there is an implied covenant in oil leases that the lessee will protect the lessor from loss occasioned by drainage, and that this covenant is separate from a covenant to develop the property. Devine maintains the trial court failed to consider properly the effect of this implied covenant when it reached the conclusion that by agreeing to drill on the West half of the SW¼ of Section 13, the parties relieved Ladd of any further duty to prevent drainage.

Ladd responds first that Devine's correspondence with Ladd prior to the writing of the letter of August 27 shows that Devine intended to reach an agreement regarding losses from drainage. Ladd further argues the settlement agreement itself, by stating Devine would initiate no legal action "so long as" Ladd complied with the agreement, implies a waiver of action to recover future losses. Ladd then concludes that the trial court's findings are clothed with a presumption of regularity and that we should not set them aside unless we find them clearly erroneous. We find these arguments persuasive.

The trial court based its findings on a review of all the correspondence between the parties. Although the trial court did not delineate the specific correspondence upon which it relied, it is evident that prior to August 27, 1976, much concern was expressed on Mr. Devine's behalf about the possible losses he could sustain from drainage.[4] Indeed, in a letter dated June 15, 1976, Mr. Devine's attorney stated: "My client is suffering a very serious drainage problem and each day is a serious detriment to him." Again, in a letter dated August 3, 1976, counsel stated: "Mr. Devine still feels quite strongly that the drainage which has occurred by reason of your neglect to develop this property has caused him substantial damage." Moreover, during cross-examination regarding Mr. De-

vine's understanding in 1976 of the potential for drainage, he stated that "[A]ny of the wells offsetting [his property] . . . made me uncomfortable thinking that Ladd should offset those wells."

■ We think the contemporaneous correspondence, coupled with the extent of Mr. Devine's knowledge of the drainage problem, provides evidence to support the trial court's finding that the parties intended to settle all claims for drainage losses, both past and future, by the terms of the August 27 letter and the acceptance expressed in the letter of September 2, 1976. While this was a fact in dispute, we cannot conclude that the trial court's finding was clearly erroneous. Additionally, despite Devine's remaining argument, that finding is not contrary to Oklahoma's law regarding implied covenants.

■ The trial court found that the parties intended to relieve Ladd of any further obligation to drill, whether for development or to prevent drainage, so long as Ladd drilled two additional wells on Devine's property. Upon that finding, the court concluded as a matter of law this agreement constituted an express covenant which controlled the implied covenant to protect against drainage. Although Devine takes issue with this conclusion, he has failed to demonstrate it is contrary to law.

While neither side has cited authority holding that an express covenant to limit the number of wells to be drilled by a lessee controls the implied covenant to drill offsetting wells to prevent drainage, the law is clear that express covenants do control over implied covenants. *Central State Production Corp. v. Jordan*, 86 P.2d 790 (Okla.1939). While Devine maintains there was no such express covenant in the settlement agreement, that argument overlooks the effect of the agreement to limit Ladd's

---

plained what other evidence the trial court failed to consider in arriving at its judgment. We deem this issue specious.

**4.** While the trial court did not specify which piece or pieces of correspondence dictated its determination, its findings are sufficiently com-

prehensive to indicate the factual basis for its ultimate conclusion. Therefore, the trial court has met the burden imposed by Fed.R.Civ.P. 52(a). *Colorado Flying Academy, Inc. v. United States,* 724 F.2d 871, 877–78 (10th Cir.1984).

drilling obligations to just two wells. This limitation is express, and it derogates any implication of a duty to drill additional wells for any other purpose. Perhaps time has demonstrated to Devine the agreement was unwise; but that is the agreement he made, and he must abide it.

AFFIRMED.