LOGAN, Circuit Judge.
Teton Exploration Drilling, Inc. sued Bokum Resources Corporation in a New Mexico state court to recover for services rendered under a contract to drill certain ventilation and egress shafts on Bokum’s uranium mining property in New Mexico. Bokum removed the case to the Bankruptcy Court for the District of New Mexico after Bokum’s creditors filed an involuntary bankruptcy petition against it. There Bokum counterclaimed against Teton, asserting breach of contract and negligence. The bankruptcy court permitted Long Island Lighting Company (“LILCO”) to participate in the litigation as an interested party defendant because it had a uranium contract with Bokum, which was using funds advanced by LILCO to bring its mine into production.
The bankruptcy court found in favor of Bokum on both Teton’s claim and Bokum’s counterclaim, and entered a preliminary memorandum opinion on December 10, 1984, assessing Bokum’s damages at $1,862,511.55. On December 13, the bankruptcy judge certified the opinion to the district court for review pursuant to the District of New Mexico’s local Rule 31(g), which provides for review of “non-core” bankruptcy proceedings. On December 24, the parties filed a stipulation in the bankruptcy court that they believed the matter to be a core proceeding as defined in 28 U.S.C. § 157(b)(2), with respect to which the bankruptcy court could make a final judgment. R. II, 433. The stipulation stated that “in any event, the parties agree, pursuant to 28 U.S.C. Section 157(c)(2), that the Bankruptcy Court may enter Findings of Fact and Conclusions of Law and appropriate Orders and Judgments.” Id. The stipulation contemplated a direct appeal from the bankruptcy court to this court under 28 U.S.C. § 1293. On December 28, the district court entered an order confirming the bankruptcy court’s December 10 opinion in its entirety.
The bankruptcy judge had filed a more detailed supplemental memorandum opinion on December 26, 1984, to the same effect as his December 10, '1984, opinion and entered a proposed judgment on December 31, both of which he also certified to the district court for review pursuant to Rule 31(g). On January 7, 1985, Teton filed notices of appeal to both the district court and this court, seeking review of the December 28 confirmation order as well as the bankruptcy court’s supplemental opinion and judgment. On February 8, the district court entered orders confirming the bankruptcy court’s supplemental opinion and judgment in their entirety. Teton filed a notice of appeal from these orders on February 26, 1985. Teton’s first appeal to this court was docketed as No. 85-1046; *1524 the second appeal was docketed as No. 85-1324.
I
We directed the parties to brief the issue whether this court has jurisdiction over these two appeals. Both appeals raise identical issues. Because we conclude that this court has jurisdiction to decide Teton’s second appeal, No. 85-1324, we need not consider whether Teton’s first appeal, No. 85-1046, is properly before us.
From the certification and confirmation procedure utilized below, it appears that both the bankruptcy court and the district court intended to treat this case as a “non-core” proceeding under 28 U.S.C. § 157(c)(1).[1] If we were to find such treatment appropriate, then the district court’s February 8 order confirming the bankruptcy court’s December 31 judgment constituted a final decision of the district court, appealable to this court under 28 U.S.C. § 1291. See In re Salem Mortgage Co., 783 F.2d 626, 632 & n. 15 (6th Cir.1986); In re Amatex Corp., 755 F.2d 1034, 1038-39 & n. 4 (3d Cir.1985).[2] Teton now argues, however, that the bankruptcy court and the district court should have treated this case as a “core” proceeding, either because it falls within one of the categories set forth in § 157(b)(2), or because the parties stipulated to treatment of the case as a core proceeding. The proper procedure, Teton contends, would have been for the bankruptcy court to enter a final order subject only to appellate review in the district court under § 158(a), not the entirely de novo review prescribed under § 157(c)(1) for “non-core” proceedings. Had the district court acted in its appellate capacity, we would then have jurisdiction to review its decision under § 158(d).
Under § 157(b)(3), the determination whether a proceeding is core or non-core is to be made by the bankruptcy court, either sua sponte or on the motion of a party. If the bankruptcy court determines that a case is a core proceeding, it is then authorized, under § 157(b)(1), to enter a dispositive order or judgment. But even if the bankruptcy court erred in treating this as a non-core proceeding, the district court did not lack jurisdiction to enter the final order appealed from. Section 157(b)(1) provides:
“Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.”
(Emphasis added). We do not believe § 157 required the bankruptcy court to enter a final order rather than submit proposed findings and conclusions to the district court. Whether the proceedings were core or non-core, we have jurisdiction to review No. 85-1324 under 28 U.S.C. § 1291.
Our conclusion is not affected by the parties’ December 24 stipulation that the matter be treated as a core proceeding. Although the parties to a non-core proceeding may consent to final disposition by a bankruptcy judge under § 157(c)(2), we find no reason to conclude that such con *1525 sent is binding on either the bankruptcy judge or the district court. None of the parties filed any objections to the certification and confirmation procedure within the time limits specified by local rule 31(g)(2), governing review of non-core proceedings. We have before us a determination by the bankruptcy court, with which the district court agreed fully. We perceive no reason of logic or public policy that would require a remand to the district court with instructions to subject the bankruptcy court’s findings to an appellate type of review rather than the de novo review the district court apparently utilized. We believe the efficient utilization of judicial resources requires that the appeal be treated as ripe for determination on its merits.
II
Bokum, as owner of a uranium mine in New Mexico, contracted with Teton to drill five large-diameter shafts approximately 2000 feet deep to service that mine and provide ventilation and an emergency escape route. The shafts were to be lined with steel casings adequate to withstand the hydrostatic pressure exerted by underground water in the formations being drilled. Bokum provided Teton with lithological reports indicating the various levels at which water would be encountered.
Drilling the first hole took substantially longer than the parties had anticipated, but was eventually completed in November 1979. Teton then began lowering the steel casing into the waterfilled hole, one forty-foot section at a time. On November 24, a submerged section of the casing collapsed and the casing string dropped ninety to one hundred feet to the bottom of the hole. Teton repaired the collapsed section and completed installation of the casing, but was never able to prevent water from flooding the shaft, apparently through a rupture in the bottom of the casing.
The bankruptcy court found that the November 24 collapse was “due to a combination of inadequate design and improper fabrication [of the casing], including inadequate welding,” R. II, 412, for which Teton was ultimately responsible. The court found that even if the hole could be cleared of water, the casing was not strong enough to insure against collapse or rupture due to hydrostatic pressure below 1000 feet. The court concluded that “abandonment of the hole appears to be the only safe and reasonable conclusion with respect to the utility and value of this casing.” R. II, 413.
The court found that Bokum had effectively abandoned the mine when it encountered financial troubles and uranium mining became unprofitable. It therefore refused to give Bokum the benefit of the bargain. Rather the court in effect allowed rescission, and ordered that Bokum should get back all of the monies that it had paid Teton, less the amounts paid for use of Teton’s drilling rig and installation of three “cellers” for use with other shafts. R. II, 427. The court rejected Teton’s assertions of substantial performance and quantum meruit. It found that the shaft was “of no practical benefit” to Bokum, R. II, 422, and that Teton’s performance was not excused by Bokum’s failure to pay invoices after the November 24 collapse.
Teton contends on appeal that (1) the contract placed the risk on Bokum for all losses of the shaft or casing caused by something other than the gross negligence of Teton; (2) the damages awarded must be reduced even if Bokum is entitled to some recovery; and (3) Bokum’s failure to pay invoices breached the contract, excusing further performance by Teton.
The chief focal point of the dispute between the parties is the meaning of Article VIII(D) of the contract.[3] Several provi *1526 sions of the contract, including Article VIII(A), required Teton to perform services and work “in a good and workmanlike manner.” [4] R. I, 16. Article VIII(A) also required Teton to exercise “due diligence and care.” Id. But subparagraph D of Article VIII provided that “[a]ll liability for loss of holes, casing, downhole tools, drill pipe, fishing costs, etc., except if caused by the gross negligence of Teton, shall be the responsibility of” Bokum. Id.
Teton asserts that this subparagraph “clearly and unambiguously places the risk on Bokum for all losses of the shaft or of the casing which are caused by something other than the gross negligence of Teton.” Appellant’s Brief at 24 (emphasis in original). Bokum and LILCO, on the other hand, assert that the subparagraph deals only with unforeseen conditions encountered below the ground surface; they argue that, if given Teton’s interpretation, Article VIII(D) would in effect abrogate all the other provisions in the contract that require Teton to proceed in a good and workmanlike manner.
The bankruptcy court's findings, confirmed by the district court, were to the effect that subparagraph D was ambiguous. The court allowed parol evidence on the provision’s meaning, and, after considering such evidence, concluded that Article VIII(D) only referred to “losses incurred as a result of unforeseen conditions existing beneath the surface,” R. II, 408, and did not excuse Teton from ordinary negligence in failing to design and install casing into the hole that would keep out the water. The determination whether a contract provision is ambiguous is a matter of law. Devine v. Ladd Petroleum Corp., 805 F.2d 348, 349 (10th Cir.1986); Kelliher v. Herman, 701 P.2d 1157, 1159 (Wyo.1985). After examining the contested clause and reading the contract as a whole, we agree with the district court that the clause at issue is ambiguous. Once a provision is found to be ambiguous, the resolution of its proper meaning is a question of fact, subject to review on a clearly erroneous standard. City of Farmington v. Amoco Gas Co., 777 F.2d 554, 560 (10th Cir.1985). We hold that the district court’s interpretation of Article VIII(D) is not clearly erroneous.
Teton argues that the damages awarded must be reduced even if Bokum is entitled to recovery. It asserts entitlement to a $160,000 setoff because Bokum abandoned the drilling of the other four shafts and Article X of the contract penalized Bokum $40,000 for each shaft not drilled. The bankruptcy court found, however, that the parties, by mutual agreement, had can-celled the remaining portion of the contract, excusing the operation of the penalty clause. Teton also argues that it should not be required to return some $91,000 that it was paid for providing mud pits, water and cement, services Bokum had initially agreed to provide under Article IV of the contract. Bokum’s response, apparently *1527 accepted by the court, was that the contract had been modified at the outset to require Teton to provide these services. Finally, Teton argues that the damages must be reduced because the shaft is still valuable to Bokum, and could be made usable by expenditures of $6000 to $7000. The district court rejected this argument, relying on evidence that the shaft could not feasibly be made safe.
Teton’s arguments about the amount of damages due Bokum allege errors in the court’s findings of fact, which we will set aside only if they are clearly erroneous. City of Farmington, 777 F.2d at 560. Te-ton’s argument that Bokum’s failure to pay invoices breached the contract and excused Teton from completing performance also alleges errors of fact. The bankruptcy court found that
“[t]he material breach by Teton which became evident on November 24, 1979 excused [Bokum] from further payments until that performance by Teton was rectified____ [Bokum’s] refusal to pay from and after November 24, 1979 was justified as a result of the abundantly apparent defective workmanship it had been provided through and by Teton. As a result of Teton’s material breach of the Drilling Contract, it cannot claim a subsequent breach by [Bokum] in refusing to pay.”
R. II, 423.
We have examined the record carefully and conclude that the bankruptcy court’s findings of fact, confirmed by the district court, are supported by the record. We cannot find clearly erroneous the determinations that Article VIII(D) of the contract did not excuse Teton’s failure to perform in a “good and workmanlike manner;” that the parties mutually agreed to abandon the contract with respect to completing the final four holes and excused the $40,000 per hole penalty provision; that the $91,000 was a proper expenditure to be returned to Bokum as a part of making it whole; that the shaft was not usable in the condition Teton left it after many efforts to repair; and that Teton had materially breached the contract before Bokum suspended payment on the invoices.
AFFIRMED.

. Subsection (c)(1) provides:
"A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected."

. One panel of the Ninth Circuit has held that 28 U.S.C. § 158(d) is "the exclusive basis of jurisdiction in the appellate courts in bankruptcy matters." In re Teleport Oil Co., 759 F.2d 1376, 1378 (9th Cir.1985); accord In re Barrier, 776 F.2d 1298, 1299 (5th Cir.1985) (following Teleport). Later Ninth Circuit cases cast doubt on the Teleport decision. See In re Benny, 791 F.2d 712, 717 & n. 4 (9th Cir.1986). Section 158(d) contains no provision for appellate review of final district court orders entered in non-core proceedings under § 157(c)(1). If Teleport were correct, then such orders would be unreviewable. Because we perceive no indication that Congress intended § 158(d) to act as a limitation on the general jurisdiction of appellate courts under § 1291, we decline to follow Teleport. Accord In re Salem Mortgage Co., 783 F.2d 626, 632 n. 15. (6th Cir.1986).

. Article VIII, entitled "Obligations of Teton,” provides in full:
"Teton will provide qualified personnel as may be necessary to drill the shafts, set the casing, complete expeditiously all the work and operations contemplated hereunder in accordance with this agreement. In furtherance of the foregoing but not by way of limitation or exclusion, Teton shall:
A. Perform the services and work required hereunder in a good and workmanlike manner with due diligence and care;
B. Be solely responsible for the supervision, control and performance of all work and' services required of Teton hereunder;
*1526 C. Keep and furnish to the Owner sufficiently accurate records of all work performed by Teton on a daily report form;
D. Teton will make no warranties as to the stability of the formation to be drilled and, therefore, is not responsible for any damage, loss or delay resulting from stuffing or caving of formations. In addition, there is no guarantee as to the actual cost or time required for the completion of the contract. All liability for loss of holes, casing, downhole tools, drill pipe, fishing costs, etc., except if caused by the gross negligence of Teton, shall be the responsibility of Owner and shall not be included in the target for the purpose of bonus calculations."
R. I, 16.

. Article II provides, in part: “On commencement of the work, Teton shall diligently continue operations hereunder in a good and workmanlike manner consistent with drilling industry standards until Teton has completed such operations and shafts are accepted by Owner.” R. I, 13.
Article IX, entitled “Inspection and Acceptance," provides:
“Within twelve (12) hours after completion of each shaft, Owner shall visually inspect the same, and if Owner finds the work to be completed in accordance with this agreement and in a good and workmanlike manner, shall issue to Teton a written statement accepting the work with respect to each shaft.
Any remedial work required prior to acceptance of the hole will be done at the rates provided herein and charged against the target estimate."
R. I, 17.