951 F.2d 1261
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UTAH CONSTRUCTION AND DEVELOPMENT COMPANY, INC., a Utah
corporation, Plaintiff-Appellee,
v.
REYNOLDS ELECTRICAL & ENGINEERING CO., INC., a Texas
corporation, Defendant-Appellant,
and
XYZ Surety Corportion, Defendant.
 No. 90-4127.
 United States Court of Appeals, Tenth Circuit.
 Dec. 12, 1991.
 
 Before HOLLOWAY, MCWILLIAMS and TACHA, Circuit Judges.
 ORDER AND JUDGMENT*
 TACHA, Circuit Judge.
 
 
 1
 Defendant-appellant Reynolds Electrical & Engineering Company, Inc. (REECo) appeals the district court's order granting summary judgment to plaintiff Utah Construction and Development Company, Inc. (UCD) and denying REECo's motion for summary judgment. On appeal, REECo argues that the district court misinterpreted the contract's language and that, interpreted correctly, the contract required UCD to absorb the cost of increased wages caused by REECo's renegotiation of wage rates. We exercise jurisdiction under 28 U.S.C. § 1291, and we affirm the district court's order.
 
 
 2
 REECo is a Management and Operating Contractor under contract with the United States Department of Energy. At issue in this case are two subcontracts between REECo and UCD, a REECo subcontractor. During the course of UCD's performance of the subcontracts, REECo negotiated an increase in the wage rates paid to several classes of workers. UCD paid the increased wage rates and informed REECo that it considered the payment to be pursuant to a "change order" under the terms of the subcontracts. When REECo refused to compensate UCD for the increased costs, UCD sued for equitable reimbursement. After reviewing the contract provisions, the district court entered summary judgment in favor of UCD, holding that UCD was entitled to reimbursement.
 
 
 3
 We review summary judgment orders de novo, using the same standards the district court applies. Osgood v. State Farm Mut. Ins. Co., 848 F.2d 141, 143 (10th Cir.1988). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see Anderson v. Liberty Lobby, 477 U.S. 242, 247-48 (1986). We review de novo legal questions of contract interpretation. Teton Exploration Drilling, Inc. v. Bokum Resources Corp., 818 F.2d 1521, 1526 (10th Cir.1987).
 
 
 4
 Three contract provisions, identical in both subcontracts, are at issue in this case. The first is referred to as the firm price clause:
 
 
 5
 The above price is firm and not subject to escalation from or on account of any cost or matter whatsoever, and shall be inclusive of all elements of profit, overhead, wages, fringe benefits, transportation, equipment supplies, materials, insurance, licenses, taxes and costs of whatever kind, including final clean-up of the premises, applicable to this transaction.
 
 
 6
 The second clause, quoted in relevant part, is the subcontracts' "changes clause":
 
 
 7
 a. The contractor may at any time, without notice to the sureties, by written order designated or indicated to be a change order, make any change in the work within the general scope of the subcontract including, but not limited to, changes:
 
 
 8
 1. In the specifications (including drawings and designs);
 
 
 9
 2. In the method or manner of performance of the work;
 
 
 10
 3. In the government-furnished facilities, equipment, materials, services or site; or
 
 
 11
 4. Directing acceleration in the performance of the work.
 
 
 12
 b. Any other written order or an oral order (which terms as used in this paragraph (b) shall include direction, instruction, interpretation or determination) from the contractor, which causes any such change, shall be treated as a change order under this article; provided that the subcontractor gives the contractor written notice stating the date, circumstances and source of the order and that the subcontractor regards the order as a change order.
 
 
 13
 ....
 
 
 14
 d. If any change under this article causes an increase or decrease in the subcontractor's cost of, or the time required for, the performance of any part of the work under this subcontract whether or not changed by any order, an equitable adjustment shall be made and the subcontract modified in writing accordingly.
 
 
 15
 Finally, a rider--Rider No. 9--was attached to the subcontracts and reads in pertinent part as follows:
 
 
 16
 The Subcontractor agrees to comply fully with the terms and provisions of the following Project Labor Agreements for Construction between REYNOLDS ELECTRICAL & ENGINEERING CO., INC., and the Unions listed hereafter. Under the terms of this Rider No. 9, the Subcontractor is required to pay in strict accordance with the amounts listed in said Labor Agreements for hourly wages, fringe benefits, and subsistence. The Subcontractor also agrees to comply strictly with all other terms and conditions of said Labor Agreements.
 
 
 17
 REECo contends that the firm price clause, which specifically mentions wages and fringe benefits, requires UCD to absorb the increased wages. When read alone, the clause may support such a contention. However, when interpreting a contract, we read the contract as a whole and attempt to construe the various contract clauses consistently. See D. Moody & Co., Inc. v. United States, 5 Cl.Ct. 70 (1984). We agree with the district court that, when the clauses are read together, the changes clause is a specific exception to the broader firm price clause. To read the two clauses otherwise would deprive the changes clause of any meaning.
 
 
 18
 We next address whether the increase in wage rates constituted a "change" that was "ordered" by REECo. The changes clause contains a nonexclusive list of things that constitute "changes," including requests by the contractor to alter specifications, the method or manner of performance, equipment or materials used, or the rate of performance of the subcontract. Although the changes clause does not specifically mention wage increases, we conclude that wage increases ordered by the contractor fall into paragraph (b)'s general category of "[a]ny other written order or an oral order ... which causes any such change." We agree with the district court that, based on the specific types of changes listed in paragraph (a) in the changes clause, a "change" was intended to be an alteration in the subcontractor's performance over which the contractor has control and over which the subcontractor has no control. Courts addressing the issue have agreed that wage increases constitute a "change" under a standard changes clause. See, e.g., Sunswick Corp. v. United States, 75 F.Supp. 221, 230 (Ct.Cl.), cert. denied, 334 U.S. 827 (1948); Philco-Ford Corp., 72-1 B.C.A. (CCH) 9390 (March 28, 1972).
 
 
 19
 REECo contends that it never "ordered" UCD to pay the increased wages as is required to qualify as a change under the changes clause. We disagree. REECo does not dispute that it informed UCD that it had renegotiated the wage rates contained in the labor agreements with the union. Rider No. 9, obviously included in the subcontract for REECo's benefit, required UCD to pay in accordance with the Labor Agreements. This contractual requirement, in conjunction with REECo's notice to UCD of the renegotiated rates, is tantamount to an order by REECo to pay the increased amounts. The liberal definition of an order in the changes clause supports this interpretation. It states that an order "shall include direction, instruction, interpretation or determination" from REECo to make a change.
 
 
 20
 REECo also contends that the wage increase was not a "change" under the changes clause because REECo did not have exclusive control over the wage increase; instead, the increase was the result of bilateral negotiations between REECo and the labor unions. Specifically, REECo argues that the cases cited by UCD and by the district court (and above in this order) are inapposite because they involve government contracts in which the government unilaterally increased wage rates. This argument is fallacious for two reasons. First, the cases cited specifically distinguish between general wage increases (usually alterations of the minimum wage rate) ordered by the government acting as a sovereign and specific wage increases ordered by a specific government agency acting as a contractor. Second, REECo's argument suggests that no change ordered by REECo would fall within the scope of the changes clause unless REECo independently decided to make the change. Even "changes" expressly contemplated in the changes clause do not always originate as an independent decision of the contractor, REECo. Instead, changes in contract specifications, materials, site, completion date, etc., often result from the request of the party for which the general contract is being performed--the Department of Energy in this case.
 
 
 21
 Each of the Project Labor Agreements referred to in Rider No. 9 states that the agreements between REECo and the unions may be "reopened" upon the request of either party. REECo argues that these reopener clauses put UCD on notice that the wage rates could be renegotiated and obligated UCD to calculate its bid based on the possibility that it might have to pay higher wages. Taking account of the nature of the changes clause in these subcontracts, we must disagree. The changes clause clearly put UCD on notice that it might incur increased costs due to any of a number of changes. However, by providing for equitable reimbursement, the changes clause eliminated the need for UCD to recalculate its bid to account for these contingent changes. Because we hold that the wage increase is a change within the language of the changes clause, we conclude that UCD was justified in expecting to be reimbursed for any wage increase and was not obligated to incorporate the costs of such an increase in its bid.
 
 
 22
 Finally, REECo contends that UCD's actions in a prior subcontract with REECo are evidence that the parties intended that UCD would absorb the cost of wage increases. During the course of a 1984 subcontract, wages increased and UCD paid the increased costs without seeking reimbursement from REECo. UCD concedes that it adjusted its bid to account for the possibility that wages might increase.
 
 
 23
 Initially, we note that we hesitate to conclude that conduct related to a single transaction that occurred six years prior to the instant subcontracts establishes a course of dealing between the parties. In addition, the situation surrounding the 1984 subcontract was different than the facts in this case. Prior to the 1984 subcontract, UCD was informed that the labor agreements setting labor wage rates would expire during the term of UCD's subcontract with REECo. Knowing that the wage rates would have to be renegotiated, UCD inquired as to what those increases might be and then increased its bid accordingly. In the instant case, the Labor Agreements were not to expire until after the termination of the subcontracts.[1] Therefore, UCD had much less reason to expect a change and less basis upon which to include such contingencies in its bid. Therefore, we conclude that the prior course of dealing between UCD and REECo is insufficient to evidence an intent different from that evidenced by the terms of the subcontracts in this case.
 
 
 24
 REECo argues that the district court should not have decided this case on summary judgment because there is a factual dispute over whether UCD was on notice--either actual or constructive--that wages would be renegotiated during the two subcontracts at issue in this case. REECo argues that this dispute is relevant to the establishment of a course of dealing between UCD and REECo based on the 1984 subcontract. Because we conclude that there is a difference between notice that labor wage renegotiations would occur during the 1984 subcontract and notice that renegotiations might occur during the two subcontracts at issue here, we hold that there is no factual dispute that precludes entry of summary judgment.
 
 
 25
 Accordingly, we AFFIRM the order of the district court.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 Although REECo disputes several facts (as stated by UCD) surrounding the 1984 subcontract, REECo does not dispute the fact that the labor agreement was to expire during that subcontract