911 F.2d 380
 59 USLW 2122, 23 Collier Bankr.Cas.2d 745,
18 Fed.R.Serv.3d 632,
20 Bankr.Ct.Dec. 1418, Bankr. L. Rep. P 73,570
 In re KAISER STEEL CORPORATION, Debtor.
KAISER STEEL CORPORATION; Kaiser Coal Corporation,
Plaintiffs-Appellees/Respondents,
v.
Joseph A. FRATES; Charles S. Holmes; Robert E. Merrick;
Stan P. Doyle; and Perma/Frates Joint Venture,
Defendants-Appellants/Petitioners.
 No. 90-1013.
 United States Court of Appeals,
Tenth Circuit.
 Aug. 10, 1990.
 
 James L. Harrison (Paul F. Hultin & Marcus L. Squarrell of Parcell, Mauro, Hultin & Spaanstra, P.C., Denver, Colo., and Thomas English, of English, Jones & Faulkner, Tulsa, Okla., with him on the brief), of Parcell, Mauro, Hultin & Spaanstra, P.C., Denver, Colo., for defendants-appellants/petitioners.
 Craig A. Christensen (Daryle L. Uphoff, Carol T. Rieger, James P. McCarthy & Joseph A. Thomson, of Lindquist & Vennum, Minneapolis, Minn., and H. Thomas Coghill & David J. Richman, of Coghill & Goodspeed, Denver, Colo., with him on the brief), of Sherman & Howard, Denver, Colo., for plaintiffs-appellees/respondents.
 Before SEYMOUR and TACHA, Circuit Judges, and BRATTON,* Senior District Judge.
 TACHA, Circuit Judge.
 
 
 1
 This is an interlocutory appeal from an order of the district court 109 B.R. 968 (D.Colo.1989) affirming an interlocutory order of the bankruptcy court 95 B.R. 782 (D.Colo.1989) striking the appellants' jury demands. Alternatively, defendants-appellants/petitioners petition for a writ of mandamus. They contend that the courts below erred in holding that: (1) by filing an indemnity counterclaim in an adversary bankruptcy proceeding, a defendant consents to bankruptcy court jurisdiction and consequently loses his seventh amendment right to jury trial; and (2) as a result of filing such proofs of claim or counterclaims, the resolution of all claims between the parties are core proceedings under 28 U.S.C. section 157(b)(2). We dismiss the appeal, but grant the petition for a writ of mandamus.
 
 I.
 
 2
 On February 11, 1987, plaintiffs-appellees/respondents Kaiser Steel Corporation and Kaiser Coal Corporation ("Kaiser") filed a voluntary petition for reorganization under chapter 11. Kaiser then commenced an adversary action in bankruptcy court challenging two transactions involving the transfer of millions of dollars in cash and property to two investor groups, the Frates and Perma groups, which owned and managed Kaiser between February 1984 and December 1986. The Frates group and the Perma/Frates Joint Venture ("PFJV") (collectively "Frates defendants") are the defendants-appellants/petitioners in this case. Kaiser seeks to recover either the assets transferred or their value pursuant to sections 544, 548 and 550 of the Bankruptcy Code. Kaiser also seeks recovery from the Frates group on the grounds that they breached their fiduciary duties as officers, directors, and controlling shareholders of Kaiser.
 
 
 3
 In June 1987, the Frates group filed an answer but did not demand jury trial. PFJV moved to dismiss. Several third party defendants also moved to dismiss or to withdraw the reference to the bankruptcy court. On October 12, 1988, the bankruptcy court denied some of the motions to dismiss and ordered all of the parties to file answers within twenty days, regardless of whether any motions to dismiss were still outstanding. On November 1, 1988, PFJV filed its answer, objected to the bankruptcy court's jurisdiction, and demanded a jury trial. On November 2 and 3, both the Frates group and PFJV moved to withdraw the reference.
 
 
 4
 Before the bar date for filing proofs of claim, various individual members of the Frates group filed proofs of claim in the underlying bankruptcy action. Joseph A. Frates and Stan P. Doyle filed contractual and statutory indemnity claims against Kaiser for any judgment entered against them in this adversary action. Robert E. Merrick and Charles S. Holmes filed proofs of claim based on alleged contractual obligations of Kaiser, which Kaiser was seeking to repudiate in a separate proceeding, Kaiser Steel Corp. v. Rial, No. 87-E-437 (Bankr.D.Colo.). After the bar date, the Frates group asserted additional counterclaims against Kaiser. PFJV never filed a proof of claim against Kaiser. In its answer, however, PFJV asserted an indemnity counterclaim.
 
 
 5
 On December 6, 1988, Kaiser filed a motion to strike the jury demands or, in the alternative, to sever the counterclaims. On January 16, 1989, the bankruptcy court granted Kaiser's motion, striking the jury demands and severing the counterclaims. The bankruptcy court held that: (1) because the Frates group had asserted or attempted to assert claims or counterclaims against Kaiser, they had consented to the jurisdiction of the bankruptcy court; and (2) the resolution of all claims would be core proceedings under 28 U.S.C. section 157(b)(2). The bankruptcy court also ruled that Kaiser's claims against PFJV were core proceedings as to which there is no right to jury trial. Following the Supreme Court's decision in Granfinanciera, S.A. v. Nordberg, --- U.S. ----, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), the bankruptcy court modified its earlier order to hold that PFJV had subjected itself to the bankruptcy court's jurisdiction by filing a counterclaim for indemnity. The Frates defendants and other parties then sought review of the bankruptcy court's order in district court.[1]
 
 
 6
 On appeal,[2] the district court affirmed the bankruptcy court's ruling striking the jury trial demands. The district court held that under an admittedly "mechanical" reading of the Supreme Court's decision in Katchen v. Landy, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), filing a proof of claim or counterclaim in the bankruptcy court operates as "consent" to the bankruptcy court's jurisdiction. Accordingly, the district court held that neither the Frates group nor PFJV had a right to jury trial. The district court did not specifically address the question of whether PFJV's claim was a core proceeding. The district court then certified its ruling for immediate appeal under 28 U.S.C. section 1292(b). The Frates group and PFJV sought permission to appeal, which we granted.
 
 
 7
 At oral argument, we requested supplemental briefing on the issue of appellate jurisdiction. Both the Frates group and PFJV contended that we have jurisdiction under section 1292(b), but also requested that we construe their appeal as a petition for writ of mandamus should we lack appellate jurisdiction.
 
 II.
 
 8
 Initially, we must determine whether we have jurisdiction over this appeal. The Frates defendants contend that we have jurisdiction under 28 U.S.C. section 1292(b). Kaiser denies that we have jurisdiction under section 1292(b). Alternatively, the Frates defendants ask that we construe their appeal as a petition for a writ of mandamus.
 
 A.
 
 9
 Section 1292(b) of title 28 of the United States Code states:When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after entry of the order.
 
 
 10
 28 U.S.C. Sec. 1292(b). It is undisputed that the district court certified its order and that we granted permission to appeal. This determination does not end our jurisdictional inquiry, however.
 
 
 11
 Appeals from district court decisions in bankruptcy are governed in part by 28 U.S.C. section 158, which states:
 
 
 12
 (a) The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title....
 
 
 13
 ....
 
 
 14
 (d) The courts of appeals shall have jurisdiction of appeals from all final decisions, judgments, orders, and decrees entered under subsections (a) and (b) of this section.
 
 
 15
 28 U.S.C. Sec. 158(a), (d). Section 158 requires us to determine: (1) whether the order being appealed was entered pursuant to section 158(a); and if so (2) the effect of section 158(d) on appeals under section 1292(b).
 
 
 16
 We begin our jurisdictional analysis by examining the order being appealed. The district court characterized its order as deciding an appeal from the bankruptcy court's ruling striking the jury demands. Although the district court's characterization of its order is not binding upon us, cf. Wheeler v. Hurdman, 825 F.2d 257, 258-59 (10th Cir.) (reviewing and accepting district court's characterization of motion as one for summary judgment under Fed.R.Civ.P. 56), cert. denied, 484 U.S. 986, 108 S.Ct. 503, 98 L.Ed.2d 501 (1987); Teton Exploration Drilling, Inc. v. Bokum Resources Corp., 818 F.2d 1521, 1524-25 (10th Cir.1987) (parties' stipulation that matter is a core proceeding not binding on court), we agree with the district court that it did, in effect, decide an appeal under section 158(a). First, both the Frates group and PFJV had petitioned for permission to take an interlocutory appeal.[3] Second, in its order the district court reviewed the bankruptcy court's action for errors; it did not purport to redetermine the factual issues de novo as a trial court under its original jurisdiction in bankruptcy. In our view this factor is determinative. We also note that no party has contested the appellate nature of the district court's action.
 
 
 17
 Because we hold that the district court's order was entered in its appellate capacity pursuant to section 158(a), we must next determine whether section 158(d)'s provision limiting the jurisdiction of the court of appeals to final orders overrides section 1292(b)'s general provisions permitting interlocutory appeals. The circuits are split on this issue. The majority hold that section 158(d) ousts section 1292(b). See LTV Corp. v. Farragher (In re Chateaugay Corp.), 838 F.2d 59, 62-63 (2d Cir.1988) ("[W]e believe that section 158(d) remains the exclusive basis for jurisdiction for decisions entered under paragraphs (a) and (c) of section 158."); In re First South Sav. Ass'n, 820 F.2d 700, 708 (5th Cir.1987) ("[T]he bankruptcy appellate scheme in 28 U.S.C. Sec. 158 clearly supersedes 28 U.S.C. Sec. 1291, and, by inference, also supersedes section 1292."); Teleport Oil Co. v. Security Pac. Nat'l Bank (In re Teleport Oil Co.), 759 F.2d 1376, 1378 (9th Cir.1985) ("We hold that Sec. 158 precludes bankruptcy appellants from relying on Sec. 1292 as a basis for appellate court jurisdiction."). Only the Seventh Circuit has definitively held that section 1292(b) provides appellate jurisdiction to review interlocutory decisions entered under section 158(a). See In re Moens, 800 F.2d 173, 177 (7th Cir.1986) ("In our view, this court may properly exercise jurisdiction pursuant to 28 U.S.C. Sec. 1292(b).... [T]here is nothing in [section 158(d)'s] legislative history which indicates that Congress intended to foreclose such review." (citation omitted)); accord Fruehauf Corp. v. Jartran, Inc. (In re Jartran, Inc.), 886 F.2d 859, 865 (7th Cir.1989).
 
 
 18
 We find that the majority position is better reasoned and hold that section 1292(b) is unavailable as a basis for interlocutory jurisdiction for cases falling under section 158.[4] We find that Congress must have intended section 158(d) to be the exclusive basis of appellate jurisdiction in bankruptcy for reviewing decisions of district courts exercising their bankruptcy appellate jurisdiction under section 158(a). Construing section 1291 to apply to orders entered under section 158(a) clearly renders section 158(d) superfluous; by analogy, section 1292 also should be inapplicable. Moreover, our construction furthers Congress's intent to limit piecemeal appeals. See Homa Ltd. v. Stone (In re Commercial Contractors, Inc.), 771 F.2d 1373, 1375 (10th Cir.1985). Finally, our conclusion does not excessively burden parties' appeal rights. Section 158(a) specifically authorizes interlocutory appeals to the district court with leave of court, and this court's mandamus jurisdiction is available in those exceedingly rare circumstances where both the bankruptcy and the district courts have clearly abused their discretion in a manner amounting to a "judicial usurpation of power," e.g., Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 34-35, 101 S.Ct. 188, 189-90, 66 L.Ed.2d 193 (1980). See Teleport Oil, 759 F.2d at 1378. For these reasons we hold that section 158(d) ousts the general appellate jurisdiction provisions of sections 1291 and 1292 for district court orders entered pursuant to section 158(a). See generally River Prod. Co. v. Webb (In re Topco, Inc.), 894 F.2d 727, 733-37 (5th Cir.1990) (generally describing bankruptcy appeals scheme). Accordingly, we lack appellate jurisdiction under section 1292(b) over the Frates defendants' interlocutory appeal from the district court's section 158(a) order.
 
 
 19
 We reach the same result even if we construe the district court's order as denying the Frates group's and PFJV's petitions for a writ of mandamus. First, the Supreme Court has repeatedly cautioned that the party seeking issuance of the writ must "have no other adequate means to attain the relief he desires." Allied Chem., 449 U.S. at 35, 101 S.Ct. at 190. The broad scope of interlocutory appeal authorized by section 158(a) necessarily decreases the availability of the extraordinary writ. Consequently, mandamus is completely unavailable in most bankruptcy situations. Second, the power to issue a writ of mandamus flows from the court's exercise of its "revisory appellate power over the inferior court." Ex parte Republic of Peru, 318 U.S. 578, 583, 63 S.Ct. 793, 796, 87 L.Ed. 1014 (1943); see also Ex parte Crane, 30 U.S. (5 Pet.) 190, 193, 8 L.Ed. 92 (1831). We conclude that the appellate nature of mandamus subjects it to the same limitations under section 158(d) as exist on our review of a district court's appellate decision under section 158(a). A party should not be able to evade section 158(d)'s limitations on review in the court of appeals merely by characterizing his action as a petition for a writ of mandamus, and then seeking an appeal as of right from the writ's grant or denial. Even if a district court could grant a writ of mandamus under its original jurisdiction in bankruptcy, we hold that such a course is merged into the statutory power to withdraw the reference. Cf. Allied Chem., 449 U.S. at 35, 101 S.Ct. at 190 (mandamus not available where other remedy exists). Accordingly, we lack appellate jurisdiction under either sections 158(d) or 1291 to review the district court's order even if we construe it as denying a petition for a writ of mandamus.
 
 
 20
 We undertake a different analysis with respect to the Frates defendants' motions to withdraw the reference. Unlike either the interlocutory appeal under section 158(a) or a writ of mandamus, the motion to withdraw the reference is clearly an interlocutory proceeding addressed to the district court's original jurisdiction in bankruptcy. As such, it is reviewable under section 1292(b). See 1 Collier on Bankruptcy p 3.01[e], at 3-64 & n. 113; cf. Bokum Resources Corp., 818 F.2d at 1524 (reviewing district court's original jurisdiction action under Sec. 1291); Dalton v. United States (In re Dalton), 733 F.2d 710, 714-15 (10th Cir.1984) (motion to withdraw reference interlocutory in nature but certifiable under Sec. 1292(b)). After examining the district court's memorandum opinion, however, we decline to construe the order as ruling on the motion to withdraw the reference. It is clear that the district court reviewed the bankruptcy court's order under an appellate standard of review. The district court did not purport to reach a decision under its original bankruptcy jurisdiction. Because we find that the district court did not rule on the motion to withdraw the reference, we decline the invitation to exercise appellate jurisdiction on that basis. In summary, we find no basis for exercising appellate jurisdiction under sections 158(d), 1291 or 1292(b) in this case; consequently, the appeal must be dismissed.
 
 B.
 
 21
 The Frates defendants in their supplemental briefs requested that we construe their request for appellate review as a petition for a writ of mandamus. We have authority to treat a petition for permission to appeal as a petition for a writ of mandamus, State Farm Mutual Auto. Ins. Co. v. Scholes, 601 F.2d 1151, 1154 (10th Cir.1979), and find such treatment is appropriate in this case.
 
 
 22
 Mandamus "is a drastic [remedy], to be invoked only in extraordinary situations," Allied Chem., 449 U.S. at 34, 101 S.Ct. at 190, and will issue only in those exceptional cases where the inferior court has acted wholly without jurisdiction or so clearly abused its discretion as to constitute a judicial usurpation of power, see id. at 35, 101 S.Ct. at 190. The requirements for seeking the writ were outlined in Allied Chemical as follows:
 
 
 23
 a party seeking issuance [must] have no other adequate means to obtain the relief he desires, ... and ... he [must] satisfy the "burden of showing that [his] right to issuance of the writ is 'clear and indisputable.' "
 
 
 24
 Allied Chem., 449 U.S. at 35-36, 101 S.Ct. at 190 (citations omitted). In Dalton we adopted five nonconclusive guidelines to assist in determining the propriety of granting the writ:
 
 
 25
 First, the party seeking the writ has no other adequate means to secure the relief desired. Second, the petitioning party will be damaged or prejudiced in a way not correctable on appeal. Third, the district court's order constitutes an abuse of discretion.... Fourth, the district court's order represents an often repeated error and manifests a persistent disregard of federal rules. Fifth, the district court's order raises new and important problems or issues of law of the first impression.
 
 
 26
 Dalton, 733 F.2d at 717 (citations omitted).
 
 
 27
 We determined that the Frates defendants had no other adequate means to secure relief when we held that we lacked appellate jurisdiction despite certification under section 1292(b). The first guideline is thus satisfied. Nor is there any dispute that the "district court's order raises new and important problems or issues of law of the first impression." Two circuits have split on the question of a bankruptcy court's power to conduct jury trials, compare In re United Mo. Bank, 901 F.2d 1449 (8th Cir.1990) (no power exists) with Ben Cooper, Inc. v. Insurance Co. of State of Pa. (In re Ben Cooper, Inc.), 896 F.2d 1394 (2d Cir.1990) (power exists), cert. granted, --- U.S. ----, 110 S.Ct. 3269, 111 L.Ed.2d 779 (1990) and the Supreme Court has expressly declined to address the issue, see Granfinanciera, 109 S.Ct. at 2802. The fifth guideline is thus satisfied. With respect to the second and fourth guidelines, we note that the Supreme Court has held that it is "the responsibility of the Federal Courts of Appeals to grant mandamus where necessary to protect the constitutional right to trial by jury." Dairy Queen, Inc. v. Wood, 369 U.S. 469, 472, 82 S.Ct. 894, 897, 8 L.Ed.2d 44 (1962); see also 16 C. Wright, A. Miller, E. Cooper & E. Gressman, Federal Practice & Procedure Sec. 3935, at 242-44 (1977). The district court clearly denied the Frates defendants a jury trial. If the Frates defendants are entitled to jury trial--the third guideline factor--the writ should issue.
 
 III.
 
 28
 We thus turn to the Frates defendants' entitlement to a jury trial as a matter of right.
 
 A.
 
 29
 Kaiser contends that the Frates group's and PFVJ's jury demands are untimely and that the right to jury trial has been waived. See Bankr.R. 9015(c) (abrogated Mar. 30, 1987); Fed.R.Civ.P. 38(c). Both Rules 9015(b) and 38(b) require jury demands to be served within ten days after service of the "last pleading directed to such issue." Bankr.R. 9015(b); Fed.R.Civ.P. 38(b). The "last pleading directed to such issue" will generally be an answer or a reply, if appropriate, and is determined on a claim by claim basis. See E.R. Christenson v. Diversified Builders, Inc., 331 F.2d 992, 994-95 (10th Cir.), cert. denied, 379 U.S. 843, 85 S.Ct. 82, 13 L.Ed.2d 48 (1964); 9 C. Wright & A. Miller, Federal Practice & Procedure Sec. 2320, at 91-93 (1971) [hereinafter Wright & Miller]. Where there are multiple parties, the last pleading by any party on a common issue will determine the time for jury demand. 9 Wright & Miller Sec. 2320, at 91-93. Amended and supplemental pleadings do not "revive a right, previously waived, to demand jury trial on the issues already framed by the original pleadings." Id. at 94-96; see also Ward v. Brown, 301 F.2d 445, 447 (10th Cir.1962). Consolidation likewise will not revive a waived jury right. See Vesper Constr. Co. v. Rain for Rent, Inc., 602 F.2d 238, 241 (10th Cir.1979).
 
 
 30
 PFJV initially filed a motion to dismiss. This motion was denied on October 12, 1988, and PFJV was given twenty days in which to file an answer. PFJV filed its answer and demand for jury trial on November 1, 1988. PFJV's demand for jury trial is timely.
 
 
 31
 The Frates group's initial answer, filed in July 1987, did not include a jury demand. The Frates group purports to rely on answers filed by other parties to establish the timeliness of their demand, filed on November 3, 1988 in a motion to withdraw the reference. The fact that no express motion was made for jury trial to the bankruptcy court is not determinative. Cf. FDIC v. Palermo, 815 F.2d 1329, 1333-34 (10th Cir.1987) (formal motion not required where pretrial memorandum called jury trial demand to attention of the court). With respect to the common issues between the Frates group and PFJV, we conclude that the Frates group has made a timely jury demand. See 9 Wright & Miller Sec. 2320, at 91-93 (for issues in which all multiple defendants are interested, time runs from service of last answer). With respect to the other issues, we can make no determination on this record. Because we find that timely demand was made as to at least some parties on some issues, we turn to the merits of PFJV's and the Frates group's jury trial claims.B.
 
 
 32
 In our view the decision in Langenkamp v. Hackler (In re Republic Trust & Savings Co.), 897 F.2d 1041 (10th Cir.1990), petitions for cert. filed, 59 U.S.L.W. 3054, 3055 (Jul. 9, 1990) (Nos. 90-71, 90-93), establishes that PFJV and the Frates group are entitled to a jury trial for those issues for which a timely demand was made. Republic Trust holds:
 
 
 33
 Although some of the appellants did file claims against the estates because they continued to have monies invested in the debtors at the time of bankruptcy, we believe they likewise are entitled to a jury trial under Granfinanciera and Katchen. Despite these appellants' claims, the trustee's actions to avoid the transfers, consolidated by the bankruptcy court, were plenary rather than a part of the bankruptcy court's summary proceedings involving the "process of allowance and disallowance of claims."
 
 
 34
 Republic Trust, 897 F.2d at 1046-47 (citation omitted). Both the Frates group and PFJV are entitled to jury trials on the fraudulent conveyance and state law claims, at least where timely jury demands were made.
 
 IV.
 
 35
 One final issue remains. We must determine the proper forum for the exercise of PFJV's and the Frates group's jury trial rights. As we noted above, two circuits have split on the question of a bankruptcy judge's power to conduct a jury trial, compare United Missouri Bank, 901 F.2d 1449 (8th Cir.1990) (no power exists) with Ben Cooper, 896 F.2d 1394 (2d Cir.1990) (power exists), cert. granted, --- U.S. ----, 110 S.Ct. 3269, 111 L.Ed.2d 779, (1990) and the Supreme Court has expressly declined to address the issue, see Granfinanciera, 109 S.Ct. at 2802. We find the Eighth Circuit's position in United Missouri Bank to be better reasoned and hold that bankruptcy judges lack the power to conduct jury trials.
 
 
 36
 We reach our decision on statutory grounds, interpreted in light of the Supreme Court's decision invalidating the bankruptcy jurisdictional scheme established by the Bankruptcy Reform Act of 1978, Pub.L. No. 95-598, 92 Stat. 2549 [hereinafter 1978 Act], as violating article III, see Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 84-85, 102 S.Ct. 2858, 2878-79, 73 L.Ed.2d 598 (1982), and Congress's response in enacting the Bankruptcy Amendments and Federal Judgeships Act of 1984, Pub.L. No. 98-353, 98 Stat. 341 [hereinafter 1984 Act]. Although Congress may have granted bankruptcy judges the authority to conduct jury trials under the broad jurisdictional provisions of the 1978 Act, see Marathon, 458 U.S. at 55, 102 S.Ct. at 2863, we find that such authority does not exist under the 1984 Act.
 
 
 37
 The 1978 Act granted the bankruptcy courts the following jurisdiction and authority:
 
 
 38
 (a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.
 
 
 39
 (b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.
 
 
 40
 (c) The bankruptcy court for the district in which a case under title 11 is commenced shall exercise all of the jurisdiction conferred by this section on the district courts.
 
 
 41
 1978 Act Sec. 241, 28 U.S.C. Sec. 1471 (repealed). Section 241 of the 1978 Act also provided that "[a] bankruptcy court shall have the powers of a court of equity, law and admiralty, but may not enjoin another court or punish a criminal contempt not committed in the presence of the judge of the court or warranting a punishment of imprisonment." Id., 28 U.S.C. Sec. 1481 (repealed).
 
 
 42
 In Marathon, the Supreme Court held that the 1978 Act's jurisdictional provisions vested all "essential attributes" of judicial power in the bankruptcy courts, in violation of article III. Marathon, 458 U.S. at 84-85, 102 S.Ct. at 2878-79. The Court emphasized the fact that the bankruptcy courts exercised all ordinary powers of the district courts, including conducting jury trials and granting declaratory judgments, habeas corpus, etc. Id. at 85, 102 S.Ct. at 2878-79. The Court also noted that decisions were reviewable only under the "clearly erroneous" standard and did not depend on article III court confirmation. Id. at 85-86, 102 S.Ct. at 2878-79. Accordingly, the Court struck down the 1978 Act's jurisdictional provisions as violating article III.
 
 
 43
 In responding to the Court's Marathon decision, Congress substantially retailored the jurisdictional structure of the bankruptcy courts. Sections 1471 and 1481 were repealed. New section 151 states:
 
 
 44
 In each judicial district, the bankruptcy judges in regular active service shall constitute a unit of the district court to be known as the bankruptcy court for that district. Each bankruptcy judge, as a judicial officer of the district court, may exercise the authority conferred under this chapter with respect to any action, suit, or proceeding and may preside alone and hold a regular or special session of the court, except as provided by law or by rule or order of the district court.
 
 
 45
 28 U.S.C. Sec. 151. Section 157 then provides that in "core" proceedings the bankruptcy judges would have the power to:
 
 
 46
 hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.
 
 
 47
 28 U.S.C. Sec. 157(b)(1). The bankruptcy judges were also empowered to determine whether a proceeding is "core." Id. Sec. 157(b)(3). In noncore proceedings, the bankruptcy judge may "hear" the proceeding, but may only issue proposed findings of fact and conclusions of law, both of which are reviewable de novo in the district court upon objection. Id. Sec. 157(c)(1). Bankruptcy judges are specifically prohibited from trying personal injury tort and wrongful death claims, which must be tried in district court. Id. Sec. 157(b)(5).
 
 
 48
 The Second Circuit in Ben Cooper held that "bankruptcy courts may conduct jury trials in core proceedings." Ben Cooper, 896 F.2d at 1402. Initially, the court noted that the majority of bankruptcy and district courts that had addressed the question had ruled in favor of jury trials before bankruptcy judges. See id. at 1402 (collecting cases). The court reasoned that the "hear and determine" and final order provisions of section 157(b)(1), when coupled with the bankruptcy judge's authority "as a judicial officer of the district court," 28 U.S.C. Sec. 151, to "exercise the authority conferred under this chapter with respect to any action, suit or proceeding," id., was sufficient to convey the power to conduct jury trials. The Second Circuit concluded:
 
 
 49
 Granfinanciera teaches that such proceedings, if legal in nature, are subject to the Seventh Amendment, but that opinion does not alter Congress' intent that they be heard by a bankruptcy court with authority to issue final orders. Construing the Bankruptcy Code to allow jury trials in the bankruptcy court is the only way to reconcile these concerns.
 
 
 50
 Ben Cooper, 896 F.2d at 1402. The Second Circuit then rejected arguments that such trials would violate the seventh amendment and article III. See id. at 1403-1404.
 
 
 51
 The Eighth Circuit in United Missouri Bank took a different view. The Eighth Circuit noted that historically bankruptcy courts had never conducted jury trials except in two very narrow statutory exceptions. See United Missouri Bank, 901 F.2d at 1452. The court then found that the 1984 Act did not expressly confer authority to conduct jury trials, see id. at 1454, whereas Congress had expressly conferred such power on United States magistrates in 28 U.S.C. sections 636(a)(3) and (c)(1), see id. The Eighth Circuit then considered whether jury trial authority could be implied from the 1984 Act's language. The court rejected the argument advanced by some courts that Congress's specific withdrawal of authority over personal injury and wrongful death claims implicitly authorized jury trials in all other cases. See id. at 1454-55. Finally, the Eighth Circuit rejected the Second Circuit's rationale in Ben Cooper:
 
 
 52
 The Second Circuit's conclusion is premised upon the reasoning that since Congress could not deprive a private litigant of his Seventh Amendment right by designating an Article I forum to hear subject matter pertaining to private rights, Congress intended that Article I forum have the authority to conduct jury trials. We find this to be a faulty syllogism. We think it more plausible that Congress simply intended to transfer all proceedings relating to the bankruptcy estate to the sole jurisdiction of the bankruptcy court without regard to whether a party was entitled to a jury trial, or which forum would conduct the trial. In fact, it appears Congress did not even consider the need to provide jury trial authority.
 
 
 53
 United Missouri Bank, 901 F.2d at 1456 (footnote omitted). The court criticized the Second Circuit's finding of an implied power as contrary to the doctrine of statutory interpretation that implied powers "must be practically indispensable and essential in order to execute the power actually conferred." Id. (citing 2A Sutherland Statutory Construction Sec. 55.03). The Eighth Circuit found no necessity existed to support an implied grant to bankruptcy courts of the power to conduct jury trials and noted that such a grant was unlikely given Congress's "wariness" of its authority to clothe article I courts with article III powers after Marathon. See id. Accordingly, the Eighth Circuit held that bankruptcy judges do not have the power to conduct jury trials.
 
 
 54
 We find the Eighth Circuit's analysis persuasive. Although bankruptcy judges may have had authority under the 1978 Act to conduct jury trials, we find that Congress's redrafting of bankruptcy court jurisdiction in the 1984 Act constituted a significant reduction in the independent authority of bankruptcy judges. Particularly significant, in our view, is the repeal of section 1481, which clothed bankruptcy judges with "the powers of a court of equity, law and admiralty." See 28 U.S.C. Sec. 1481 (repealed). No similar provisions exists under the 1984 Act, and the power of the bankruptcy judges is limited specifically to powers enumerated in the 1984 Act, see 28 U.S.C. Sec. 151. These powers consist primarily of the power to "hear and determine ... and enter appropriate orders and judgments" in core proceedings referred by the district court, see id. Sec. 157(b)(1), and the power to "hear" noncore proceedings, see id. Sec. 157(c).
 
 
 55
 We disagree with the Second Circuit's interpretation that the power to issue final orders necessarily includes the power to conduct jury trials. The plain language of section 157(b)(1) belies this interpretation:
 
 
 56
 Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.
 
 
 57
 28 U.S.C. Sec. 157(b)(1). A literal reading of this language indicates that Congress granted the bankruptcy judges the personal power to hear and determine cases. The personal nature of the power to "hear and determine" cases does not implicitly authorize the bankruptcy judge to delegate his or her duty to make final factual determinations to a jury; in fact, it suggests the impropriety of such delegation. Moreover, the presence of a jury necessarily would limit the bankruptcy judge's express power to "determine" the case because the bankruptcy judge cannot freely review the jury's factual determinations. See U.S. Const. amend. VII ("no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law.").
 
 
 58
 We are also persuaded by the absence of any express provision authorizing jury trial before bankruptcy judges. Congress in the past has provided expressly for jury trials in the Article I context. See 28 U.S.C. Sec. 636(a)(3), (c)(1) (authorizing United States magistrates to conduct jury trials with the consent of the parties). The absence of such a provision, particularly when Congress chose to expressly grant such authority in the analogous provisions for United States magistrates, is particularly compelling.
 
 
 59
 We thus agree with the Eighth Circuit that Congress had no specific intent to vest bankruptcy judges with the authority to conduct jury trials. Until Granfinanciera, it was possible for Congress to presume that jury trial rights would not extend to core proceedings. As such, no authority to conduct such trials needed to be granted. Simply because Granfinanciera suggested the desirability of granting such power to bankruptcy judges does not permit us to find that power where Congress has not granted it. Accordingly, we hold that the Bankruptcy Code, as amended by the 1984 Act, does not authorize bankruptcy judges to conduct jury trials. Where the seventh amendment requires a jury trial to be held in bankruptcy, that trial must take place in the district court, sitting in its original jurisdiction in bankruptcy.
 
 V.
 
 60
 We find that we lack appellate jurisdiction over this appeal. Accordingly, the appeal is DISMISSED. The petition for a writ of mandamus is GRANTED. The case is REMANDED for further proceedings in accordance with this opinion. The district court is directed to withdraw the reference and conduct a jury trial with respect to those petitioners and as to those issues for which a timely demand for jury trial was made.
 
 
 
 *
 The Honorable Howard C. Bratton, Senior District Judge, United States District Court for the District of New Mexico, sitting by designation. Judge Bratton attended oral argument but did not participate in the decision of this case
 
 
 [1]
 Both the Frates group and PFJV sought review of the bankruptcy court's decision by petitioning for a writ of mandamus and moving to withdraw the reference. In their petitions for a writ of mandamus, the Frates defendants also sought permission to appeal. Thus, both the Frates group and PFJV sought review in the district court through three possible avenues: (1) interlocutory appeal under 28 U.S.C. Sec. 158(a); (2) writ of mandamus; and (3) withdrawal of the reference
 
 
 [2]
 The district court consolidated all the requests for review on September 29, 1989, regardless of their procedural nature, and treated them as appeals
 
 
 [3]
 We address the possible significance of the different procedural mechanisms the Frates defendants utilized below, but note that the district court clearly did not abuse its discretion in treating these alternative motions as seeking permission to take an interlocutory appeal. See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 8, 103 S.Ct. 927, 932-33, 74 L.Ed.2d 765 (1983)
 
 
 [4]
 We recognize that there is language in Teton Exploration Drilling v. Bokum Resources Corp., 818 F.2d 1521, 1524 n. 2 (10th Cir.1987), that suggests section 158(d) does not limit appellate jurisdiction under section 1291, and by analogy, section 1292. Bokum Resources was a case decided by the district court in its original bankruptcy jurisdiction, not its section 158(a) appellate jurisdiction. The district court's order in this case, however, was entered under its section 158(a) appellate jurisdiction. We determine, therefore, that Bokum Resources is distinguishable and does not control this case