**In re DIAZO SERVICE COMPANY, INC., Debtor.**

**DIAZO SERVICE COMPANY, INC., Plaintiff,**

**v.**

**Herbert REDMOND, Shirley Redmond, A–Plus Reprographics & Supply Co., Rick Redmond, Robbie Redmond and Chuck Redmond, Defendants.**

**Bankruptcy No. 390–10757.**
**Adv. No. 391–0044A.**

United States Bankruptcy Court,
M.D. Tennessee.

Sept. 1, 1992.

Robert Waldschmidt and Thomas Pinckney, Howell, Fischer & Branham, Nashville, Tenn., for Diazo Service Co.

Gerald D. Neenan, Flynn and Neenan, Attys., P.C. and Steven Lefkovitz, Lefkovitz & Lefkovitz, Nashville, Tenn., for Herbert Redmond, Shirley Redmond and A–Plus Reprographics & Supply Co.

Alan C. DeBusk, Nashville, Tenn., for Rick and Robbie Redmond.

Chuck Redmond, pro se.

## MEMORANDUM

KEITH M. LUNDIN, Bankruptcy Judge.

The debtor sued its former owners and entities related to its former owners claiming that the defendants destroyed the debtor's business. All causes of action were tried to a jury except equitable subordination. The jury returned a verdict for defendants on all issues submitted. The debtor filed this motion for a new trial. The questions presented are: (1) whether the debtor is entitled to a new trial either because the bankruptcy court was not authorized to conduct a jury trial, or because the jury's verdict was against the weight of the evidence; and (2) whether Herbert and Shirley Redmond's claim against the bankruptcy estate should be subordinated to the claims of other creditors. Plaintiff is not entitled to a new trial. Plaintiff is not entitled to equitable subordination. The following constitute findings of fact and conclusions of law. Bankr.R. 7052.

### I.

Diazo Service Company is a Chapter 11 debtor engaged in the business of blueprinting and reprographics. Diazo was originally owned by defendants Herbert and Shirley Redmond. Herbert and Shirley Redmond sold Diazo to its current owner

22 months before Diazo filed Chapter 11. The essence of this adversary proceeding is that Herbert and Shirley Redmond, together with other members of the Redmond family and their spouses, ruined Diazo's business by opening competing businesses, by wrongfully interfering with Diazo's business, by violating Tennessee Consumer Protection laws and by conspiracy.

Diazo demanded a jury trial. The defendants did not contest that demand. However, three defendants, Pam Crick, Tony Crick and Prographics, Inc., sought withdrawal of the reference of this adversary proceeding to the United States District Court for the Middle District of Tennessee. These three defendants were voluntarily dismissed by Diazo when their refusal to consent to jury trial in the bankruptcy court threatened to provoke the district court's withdrawal of the reference. Jury trial commenced in the bankruptcy court based on consent of all remaining parties. None of the remaining parties objected either to the jury trial or to the forum in which it was conducted.

The jury returned a verdict for defendants on all claims except equitable subordination, which was reserved for decision by the court. A judgment was entered on the jury's verdict on January 23, 1992.

On January 24, 1992, the United States Court of Appeals for the Sixth Circuit ruled that bankruptcy courts do not have statutory authority to conduct jury trials. *Rafoth v. National Union Fire Ins. Co. (In re Baker & Getty Financial Services, Inc.)*, 954 F.2d 1169 (6th Cir.1992). Diazo filed a motion for new trial on February 3, 1992, arguing that the jury's verdict was against the weight of the evidence. This motion was amended to argue that the trial was invalid because the bankruptcy court was without authority to conduct a jury trial under *Baker & Getty*.

## II. MOTION FOR NEW TRIAL

Bankruptcy Rule 9023 incorporates Rule 59 of the Federal Rules of Civil Procedure. Rule 59(a) provides that "A new trial may be granted ... (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States."

Bankruptcy Rule 9005 incorporates Rule 61 of the Federal Rules of Civil Procedure which provides that:

> [N]o error or defect in any ruling or order or in anything done or omitted by the court ... is ground for granting a new trial ... unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

■ The decision whether to grant a new trial is within the discretion of the trial judge and is reviewable for abuse of discretion only. *Monette v. AM-7-7 Baking Co.*, 929 F.2d 276, 280 (6th Cir.1991) ("The grant or denial of a new trial is purely within the discretion of the trial court."); *Igo v. Coachman Indus., Inc.*, 938 F.2d 650, 655 (6th Cir.1991).

■ Grounds for granting a new trial include a verdict against the weight of the evidence, excessive or insufficient damages, substantial errors concerning admission of evidence, jury misconduct, facial inconsistency in the verdict, denial of the proper mode of trial, or newly discovered evidence or law. *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251, 61 S.Ct. 189, 194, 85 L.Ed. 147 (1940). This list is not exclusive. The question ultimately is basic fairness to the litigants. A new trial should be granted if the trial court believes that the trial was unfair. *Jackson v. Shell Oil Co.*, 401 F.2d 639 (6th Cir.1968). A new trial may be granted if the trial judge, after weighing the evidence, finds that the verdict is against the clear weight of the evidence. "[T]he jury's verdict should be accepted if it is one which could reasonably have been reached." *Bruner v. Dunaway*, 684 F.2d 422, 425 (6th Cir.1982), *cert. denied sub nom. Bates v. Bruner*, 459 U.S. 1171, 103 S.Ct. 816, 74 L.Ed.2d 1014 (1983) (citations omitted); *J.C. Wyckoff & Assocs. v. Standard Fire Ins. Co.*, 936 F.2d 1474,

1487 (6th Cir.1991) ("the trial court must compare the opposing proofs, weigh the evidence, and set aside the verdict if it is of the opinion that the verdict is against the clear weight of the evidence"). The trial court may not grant a new trial "merely because the jury could have drawn different conclusions." *Hawley v. Dresser Indus., Inc.*, 958 F.2d 720, 724 (6th Cir.1992); *Bondie v. Bic Corp.*, 947 F.2d 1531, 1535 (6th Cir.1991).

■ Newly discovered law may warrant a new trial if the failure to apply the correct law rendered the trial unfair. *Nebel v. Avichal Enterprises, Inc.*, 704 F.Supp. 570, 575 (D.N.J.1989). *See Sulzbacher v. Continental Casualty Co.*, 88 F.2d 122, 124–25 (8th Cir.1937) (new trial granted because undiscovered law would have changed the outcome). However, legal arguments that were available at the time of the trial but not pursued normally do not justify a new trial. *Marshall v. Southeastern Pa. Transp. Auth.*, 587 F.Supp. 258, 265 (E.D.Pa.1984).

## A. UNAUTHORIZED JURY TRIAL

Diazo argues it is entitled to a new trial because the Sixth Circuit's decision in *Baker & Getty* applies retroactively to invalidate the jury trial that occurred. Diazo contends that this defect could not be waived, thus its pre-trial consent to jury trial in the bankruptcy court was ineffective.

Retroactive application of *Baker & Getty* is appropriate. The Supreme Court's plurality opinion in *James B. Beam Distilling Co. v. Georgia*, — U.S. —, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991), requires retroactivity on these facts.

In *Beam*, the Court outlined three ways decisions may be applied. First, a fully retroactive decision is applied to both the parties currently before the court and to all other parties, unless principles of res judicata or procedural barriers such as statutes of limitations apply. "This practice is overwhelmingly the norm ... and is in keeping with the traditional function of the courts to decide cases before them based upon their best current understanding of the law." *Beam*, at —, 111 S.Ct. at 2443, 115 L.Ed.2d at 488.

Second, a decision applied purely prospectively would apply neither to the parties in the case before the court nor to other cases based on events that occurred prior to the decision. The explanation of this approach is that "[t]he past cannot always be erased by a new judicial declaration ... [and] to apply the new rule to parties who relied on the old would offend basic notions of justice and fairness." *Beam*, at —, 111 S.Ct. at 2444, 115 L.Ed.2d at 489.

The third possible approach, "modified" or "selective" prospectivity, involves applying a new decision to the case in which it is pronounced, but applying the old rule to other cases based on events occurring before the decision. Selectively prospective application of civil decisions was rejected in *Beam* because "similarly situated litigants should be treated the same." At —, 111 S.Ct. at 2440, 115 L.Ed.2d at 491.

Because decisions must be applied completely retroactively or completely prospectively, "[o]nce retroactive application is chosen for any asserted new rule, it is chosen for all others who might seek its prospective application." *Beam*, at —, 111 S.Ct. at 2447–48, 115 L.Ed.2d at 493. The Sixth Circuit applied *Baker & Getty* to the parties before it. 954 F.2d at 1174. Under *Beam*, the holding in *Baker & Getty* applies to these similarly situated litigants.

Retroactive application of *Baker & Getty* means only that the use of a jury in this adversary proceeding was statutorily unauthorized. It does not answer the question whether a party who consented to this trial by jury is entitled to a new trial.

Diazo consented to trial by jury in the bankruptcy court at the pretrial conference on April 1, 1991. *See* Pretrial Order, Adv. Proc. No. 391–0044A (Bankr.M.D.Tenn. Apr. 8, 1991). When defendants Pam Crick, Tony Crick and Prographics, Inc., who were added to this proceeding after the April 1 pretrial conference, refused to consent to jury trial in the bankruptcy court, Diazo chose to dismiss its claims

against them rather than risk that the district court would withdraw the reference of this adversary proceeding. *See* Affidavit of Gerald D. Neenan, filed Feb. 14, 1992. Diazo does not contest that it intended to consent to trial by jury in the bankruptcy court. Diazo's counsel represented in oral argument that he preferred to conduct the trial when scheduled in the bankruptcy court rather than wait for a later trial date in the district court.

Although one district judge for the Middle District of Tennessee had ruled that jury trials could be conducted in the bankruptcy court, *In re Washington Mfg. Co., Inc.,* 133 B.R. 113, 118 (M.D.Tenn.1991), conflicting decisions at the circuit level rendered the question much uncertain at the time of this trial. *Compare Ben Cooper, Inc. v. The Ins. Co. of the State of Penn. (In re Ben Cooper, Inc.),* 896 F.2d 1394 (2d Cir.), *cert. granted,* —— U.S. ——, 110 S.Ct. 3269, 111 L.Ed.2d 779, *vacated and remanded,* —— U.S. ——, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990), *reinstated on remand,* 924 F.2d 36 (2d Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 2041, 114 L.Ed.2d 126 (1991); *to In re United Mo. Bank of Kansas City, N.A.,* 901 F.2d 1449 (8th Cir.1990); and *Kaiser Steel Corp. v. Frates (In re Kaiser Steel Corp.),* 911 F.2d 380 (10th Cir.1990). Diazo consented to a jury trial in the bankruptcy court not because it had no reasonable basis in law or fact to argue otherwise, but because it chose a bankruptcy forum. Its consent was neither coerced nor misinformed. Diazo's consent included assumption of a known risk that when presented with the issue, the Sixth Circuit might rule that bankruptcy courts are without statutory authority to conduct jury trials.

■ Diazo has not shown any prejudice from the forum it selected for the jury trial. Diazo has not provided any evidence of unfairness, has not challenged the manner in which the trial was conducted and has not suggested that proper trial formalities were not observed. Diazo has neither challenged the process by which the jury was selected or instructed nor suggested evidence of any jury misconduct. The only (unspoken) complaint Diazo has about the trial is that it lost. Whether losing entitles Diazo to a new trial is measured against the standards for granting a new trial on the ground that the verdict was against the weight of the evidence (discussed below). Because Diazo neither was unfairly deprived of an opportunity to object to a jury trial in the bankruptcy court nor was Diazo prejudiced by the bankruptcy court's acceptance of its consent to conduct of the jury trial in the bankruptcy court, *Baker & Getty* does not entitle Diazo to a new trial. *See Del Rio Distrib., Inc. v. Adolph Coors Co.,* 589 F.2d 176 (5th Cir.), *cert. denied,* 444 U.S. 840, 100 S.Ct. 80, 62 L.Ed.2d 52 (1979) (affirmed trial court's denial of a new trial based on a change in the applicable legal standard during the trial due to a Supreme Court decision. Appellant "failed to establish that any manifest injustice occurred" and therefore was not entitled to a new trial.)

■ Lack of statutory authority to conduct a jury trial is a nonjurisdictional defect that was waived by Diazo's consent to trial before the bankruptcy court. A defect in the trial court's subject matter jurisdiction would be subject to challenge after trial notwithstanding consent or waiver before trial. Lack of jurisdiction cannot be cured or waived by failure to object and could provide the basis for a new trial. *See Hampton v. Graff Vending Co.,* 516 F.2d 100 (5th Cir.1975).

*Baker & Getty* 's condemnation of jury trials in bankruptcy court was based on lack of statutory authority not on lack of subject matter jurisdiction. *Baker & Getty,* 954 F.2d at 1173. *See also In re United Mo. Bank of Kansas City, N.A.,* 901 F.2d 1449 (8th Cir.1990); *Kaiser Steel Corp. v. Frates (In re Kaiser Steel),* 911 F.2d 380 (10th Cir.1990). The bankruptcy court's subject matter jurisdiction is not implicated in *Baker & Getty. See Bertholet v. Harman,* 126 B.R. 413, 416 (Bankr. D.N.H.1991) (jury trial in bankruptcy court does not implicate jurisdiction). Subject matter jurisdiction for this adversary proceeding in the United States District Court is clear under 28 U.S.C. § 1334. The bank-

ruptcy court is a unit of the district court, 28 U.S.C. § 151. Section 157 of the Judicial Code, 28 U.S.C. § 157, authorized the district court to refer this adversary proceeding to the bankruptcy court. Administrative Order 28–11 automatically accomplished reference of this adversary proceeding from the United States District Court for the Middle District of Tennessee to this bankruptcy court. It has not been argued here that either 28 U.S.C. § 1334(b), which grants subject matter jurisdiction over this adversary proceeding to the district court, or 28 U.S.C. § 157(c)(2), which provides for reference of this proceeding to the bankruptcy court, is inapplicable or unconstitutional.

## B. WEIGHT OF EVIDENCE

■ Although reasonable people could differ in interpreting the evidence presented to this jury, the verdict was not seriously in error and does not constitute a miscarriage of justice. Plaintiff presented some favorable evidence, but portions of its case were weak and conflicting evidence was presented. The verdict for defendants was reasonable.

For example, plaintiff presented evidence that members of the Redmond family who continued to work at Diazo after it was sold to Conrad Matthews were poor or disloyal employees, but there was also evidence that Matthews was aware of their shortcomings and kept them as employees to maintain continuity and for other business reasons. Matthews hired defendant Chuck Redmond to work for Diazo notwithstanding that Herbert Redmond had fired (his son) Chuck Redmond for poor performance before the sale to Matthews. Although there was evidence that Robbie Redmond copied Diazo's customer list, there was no evidence that Diazo lost a single customer as a result of Robbie Redmond's actions.

The jury reasonably could have found that Diazo failed to prove a nexus between the actions of the defendants and damage to Diazo's business. For example, Diazo's expert witness, Susan Salley, was a business consultant hired by Diazo in September of 1990 to investigate the decline in sales that occurred before the third quarter of 1990. Salley testified that many of Diazo's customers were not even aware in the fall of 1990 that Matthews had purchased Diazo from the Redmonds 18 months earlier. Salley interviewed Diazo employees in September of 1990, months before the most serious misconduct by defendants. Events which occurred later included Herbert Redmond's termination of Diazo's utilities in December of 1990; Robbie Redmond's copying of Diazo's customer list; and, Herbert and Shirley Redmond's opening of a competing business, A–Plus Reprographics, in December of 1990. Diazo employees testified that business slowed down and there were problems cashing paychecks as early as October of 1990. Diazo defaulted in its payments to Herbert and Shirley Redmond in October, 1990. Diazo filed Chapter 11 on December 5, 1990. Herbert and Shirley Redmond opened their competing business, A–Plus Reprographics and Supply, Inc. after default in payments by Diazo and after Diazo filed Chapter 11. Because many of the defendants' actions took place after Diazo's business began to fail and because conflicting evidence was presenting concerning the cause of Diazo's business losses, the jury reasonably could have concluded that Diazo failed to prove that defendants caused injury to Diazo. The jury reasonably could have concluded that the amount of damages (if any) attributable to defendants' conduct was impossible to determine from the evidence.

## III. EQUITABLE SUBORDINATION

■ Bankruptcy courts have the power to subordinate a claim to other claims for reasons of equity. *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939); *Taylor v. Standard Gas and Electric Co.*, 306 U.S. 307, 59 S.Ct. 543, 83 L.Ed. 669 (1939); *McLemore v. Olson (In re B & L Lab., Inc.)*, 62 B.R. 494, 510 (Bankr. M.D.Tenn.1986). Equitable subordination is codified at 11 U.S.C. § 510(c):

(c) ... after notice and a hearing, the court may—

(1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or

(2) order that any lien securing such a subordinated claim be transferred to the estate.

Equitable subordination is "an unusual remedy which should be applied only in limited circumstances." *In re Fabricators, Inc.*, 926 F.2d 1458, 1464 (5th Cir.1991); *In re Just for the Fun of it of Tennessee, Inc.*, 7 B.R. 166, 180 (Bankr. E.D.Tenn.1980); *Pinetree Partners, Ltd. v. OTR (In re Pinetree Partners, Ltd.)*, 87 B.R. 481, 488 (Bankr.N.D.Ohio 1988). The remedy is limited to the amount of damage actually proven and is considered remedial rather than penal in nature. *In re Mobile Steel Co.*, 563 F.2d 692, 701 (5th Cir.1977); *In re Fabricators*, 926 F.2d at 1464.

The courts have developed three requirements for equitable subordination:

1) the holder of the claim must have engaged in inequitable conduct;

2) the misconduct must injure other creditors or create an unfair advantage to the claimant; and

3) equitable subordination must not be inconsistent with the Bankruptcy Code.

*In re Mobile Steel Co.*, 563 F.2d 692, 700 (5th Cir.1977); *In re Fabricators*, 926 F.2d 1458, 1464–65 (5th Cir.1991); *Boyajian v. DeFusco (In re Giorgio)*, 862 F.2d 933, 938–39 (1st Cir.1988); *In re Mace Electronics of Ohio, Inc.*, 92 B.R. 753 (Bankr. N.D.Ohio 1988). *See also Gaff v. Federal Deposit Ins. Corp.*, 919 F.2d 384, 393 (6th Cir.1990), *modified on reh'g*, 933 F.2d 400 (6th Cir.1991) (citing *In re Mobile Steel Co.*, with approval); *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939); *Comstock v. Group of Inst'l Investors*, 335 U.S. 211, 228–29, 68 S.Ct. 1454, 1463, 92 L.Ed. 1911 (1948); *Heiser v. Woodruff*, 327 U.S. 726, 732–33, 66 S.Ct. 853, 855–56, 90 L.Ed. 970 (1946) (Act cases).

Equitable subordination is available to ensure that the debtor's assets are distributed fairly among creditors. *In re Just for the Fun of It of Tennessee, Inc.*, 7 B.R. 166, 180–81 (Bankr.E.D.Tenn.1980) (purpose is "to undo or offset any inequity in the claim position of a creditor that will produce injustice or unfairness to other creditors in terms of the bankruptcy results."). The "claim should be subordinated only to the extent necessary to offset the harm which the debtor and its creditors suffered on account of the inequitable conduct." *Pinetree Partners*, 87 B.R. at 488.

There was considerable evidence of inequitable conduct by Herbert Redmond. Herbert Redmond intentionally and vindictively caused Diazo's utilities to be disconnected. He admitted signing a document reading "turn-off request." Mr. Redmond's explanation that he routinely signed documents without reading them was not credible. Herbert Redmond purposefully and for no permissible business reason obtained a telephone number nearly identical to Diazo's for Mr. Redmond's new competing business, A–Plus Reprographics & Supply Co. A–Plus's business cards and identification stickers for blueprints were modelled after Diazo's. Herbert Redmond created A–Plus's price list from Diazo's price list. Robbie Redmond copied Diazo's customer list, used graphics from Diazo's holiday schedule to create a Christmas party invitation for A–Plus, and handed out invitations to Diazo customers. Herbert Redmond and Shirley Redmond knew what their daughter-in-law was doing and encouraged it.

Although there was ample evidence of inequitable conduct, there was almost no evidence linking this conduct to any monetary loss to Diazo or its creditors. No customers testified that they were confused by the Redmonds' actions. There was no evidence that any Diazo customer stopped doing business with Diazo or was lured to do business with a competitor as a result of Herbert Redmond's inequitable conduct. Herbert Redmond inappropriately caused Diazo's utilities to be turned off, but Diazo was able to reinstate service without interruption of business. There was insufficient nexus proven between the

Redmonds' conduct and any damage to the debtor or its creditors.

Diazo argues that Herbert and Shirley Redmonds' entire claim should be subordinated, but there is no evidence to what extent other creditors or Diazo were harmed by the Redmonds' conduct. Diazo's failure to link inequitable conduct by Herbert and Shirley Redmond to any measurable injury to the debtor or creditors of the debtor is fatal to Diazo's action for equitable subordination.

An appropriate order will be entered.

## ORDER

For the reasons stated in the memorandum filed contemporaneously herewith, IT IS ORDERED, ADJUDGED and DECREED:

1. The plaintiff is not entitled to a new trial;

2. The plaintiff is not entitled to equitable subordination of the claims of Herbert and Shirley Redmond.

IT IS SO ORDERED.